FRANK RAYMOND ET AL. *v.* ZONING BOARD OF
APPEALS OF THE CITY OF NORWALK ET AL.
(AC 22023)

Foti, Mihalakos and Healey, Js.

Argued October 17, 2002—officially released April 15, 2003

*Robert L. Genuario*, with whom was *Robert A. Fuller*, for the appellants (defendant Kevin Conroy et al.).

*Thomas M. Cassone*, with whom, on the brief, were *Robert S. Bello* and *Lawrence M. Lapine*, for the appellees (plaintiffs).

*Peter J. Strassberger* filed a brief for the named defendant.

*Opinion*

HEALEY, J. This zoning appeal arises out of four consolidated zoning appeals concerning a restaurant in Norwalk. In each of the four cases, the parties are the same. The defendants Kevin Conroy, Steven Cook and

R.S.R., LLC,[1] are the owners of the restaurant and appeal from the trial court's reversal of certain decisions of the defendant zoning board of appeals of the city of Norwalk (board). The plaintiffs[2] are the owners of abutting real property. The restaurant is a permitted use in what is known as the business 3 zone. In a broad fashion, the main issues in three of the cases relate to the legality of a retractable awning and windscreen (temporary enclosure) that enclosed an outdoor dining area on a preexisting, nonconforming deck[3] attached to the rear of the restaurant. Also involved is the validity of a variance sought for a subsequent frame and glass enclosure (permanent enclosure) of the deck. The deck on which the dining area is located is entirely within the building footprint and is nonconforming only as to the rear setback line of the property. We shall refer to the three cases that concern the deck as the first case, second case and third case. The fourth case concerns a separate issue regarding parking on the street side of the restaurant, specifically, Rowayton Avenue.

---

[1] The defendants are the zoning board of appeals of the city of Norwalk; R.S.R., LLC; Kevin Conroy; Steven Cook; and James Bradley, zoning inspector for the city of Norwalk. Conroy, Cook and R.S.R., LLC, own the restaurant in question. The board did not appeal, but filed a brief in which it adopted the brief of the other defendants, with the caveat that it does not agree with the other defendants' assertion in their principal brief that the parking issue in this case "should not be viewed as a zoning issue at all." We refer in this opinion to Conroy, Cook and R.S.R., LLC, as the defendants.

[2] Initially, the plaintiffs were Frank E. Raymond, Willis Cavanaugh, Jacqueline Cavanaugh, Hillard Bloom and the estate of Norman Bloom. Frank E. Raymond died some time during the proceedings, but there has not been a substitution of an executor for him. The trial court found that Jacqueline Cavanaugh had failed to provide any evidence of aggrievement, and she, therefore, is not a party to this appeal. The court found that the remaining plaintiffs were statutorily aggrieved by virtue of their ownership of real property that abutted the property involved in this appeal.

[3] The deck is attached to the existing restaurant building, and although it extends over the rear setback line, it has existed in that location since 1992. The deck was built with the approval of the zoning and building authorities of Norwalk.

A brief procedural review of each of the four cases will facilitate our discussion. In the first case, the defendants applied for zoning approval of the temporary enclosure,[4] although they claimed that it did not require a variance because it did not further extend the nonconformity as to the rear setback line. The plaintiffs objected to that change. In 1998, the zoning enforcement officer (officer) denied the application for zoning approval, and issued a cease and desist order requiring the removal of the temporary enclosure. The defendants appealed to the board from that action. The board sustained the appeal on the ground that the ordinance involved, § 118-800 (D) (1)[5] of the Norwalk zoning regulations, was ambiguous and, therefore, that the defendants should receive the benefit of that ambiguity. The plaintiffs appealed to the court, claiming that the temporary enclosure would be an impermissible expansion of a nonconforming structure. The court held for the plaintiffs and sustained the appeal in an analysis we will discuss.[6]

The second case is essentially the same as the first case except that the second case relates to the board's reversal of the officer's 1998 denial of the defendants' application for a variance for the construction of the temporary enclosure. As we will set out, the court

[4] In 1996, the owners of the restaurant added the temporary enclosure to permit dining during inclement weather.

[5] Section 118-800 (D) of the Norwalk zoning regulations, entitled "Nonconforming structures," provides in relevant part: "(1) A nonconforming structure shall not be enlarged or altered if the result would be an increase in the extent to which the structure does not conform to these regulations. A nonconforming structure may be enlarged or altered, provided that the enlargement or alteration conforms to these regulations."

[6] In the first case, the officer also issued a cease and desist order against the owners for the construction of a new movable stoop at the front of the restaurant building to which the plaintiffs had objected. That order was overturned by the board on appeal. The court subsequently reversed the board's decision. That portion of the judgment, however, has not been appealed from.

reversed the board's decision, sustaining the plaintiffs' appeal on the same reasoning and analysis used to resolve the first case.

The third case concerns the plaintiffs' appeal from the board's decision to grant the defendants' application for a variance to construct a permanent enclosure for the dining area on the deck. Apparently because the claims made by the plaintiffs in the third case were virtually identical[7] to those raised in the second case, the court addressed them together and reached the same result as it did in the second case, specifically, that the permanent enclosure constituted an impermissible expansion of the nonconforming deck.

The fourth case does not involve the deck, but instead arises out of a 1998 cease and desist order issued by the officer to the defendants concerning certain diagonal parking spaces in the front of the restaurant. The dispute involves the claimed transformation of three parallel parking spaces into eight diagonal parking spaces that were allegedly in violation of § 118-1220 (J) of the zoning regulations. The defendants appealed to the board from the order, invoking the preexisting, nonconforming use doctrine. The board sustained the appeal. The plaintiffs then appealed to the court, which reversed the board's decision and held that the increase in parking spaces was an illegal expansion in the preexisting nonconformity and that the failure to have appro-

---

[7] One factor that distinguishes this case from the others is the defendants' claim that a December, 1996 written settlement agreement in a case not presently before us bars the plaintiffs from challenging the legality of the deck enclosures. On appeal, the defendants claim that the 1996 settlement agreement operates to bar the plaintiffs' appeal in all four cases.

The court refused to rule on the merits of that claim. In doing so, the court stated in its memorandum of decision that "[i]t would be improper for the court, in its role as a court of appeal, to determine the intent of the parties to that agreement . . . . Whether the agreement should be enforced in this proceeding is beyond the proper scope of this court's review." (Citation omitted.)

priate plantings frustrated the intent of the zoning regulations. It also concluded that the new diagonal spaces violated state law.

On appeal to this court, the defendants raise the following issues: (1) whether under the zoning regulations, as interpreted by the board, a property owner can expand vertically a building or structure that is nonconforming as to its location over the setback lines if the construction does not go beyond the existing building footprint; (2) whether the court improperly substituted its opinion for the decision of the board and incorrectly concluded that the enclosure of the deck was an illegal expansion; (3) whether the court should have considered the defense, as advanced by the defendants, that a 1996 settlement agreement between the parties, which resulted in the withdrawal of prior litigation, bars the plaintiffs' administrative appeals because they are inconsistent with the terms of that settlement agreement; (4) whether General Statutes § 8-13a[8] applies and bars the plaintiffs' appeal; and (5) whether the board could determine from the evidence before it that the parking spaces in front of the building were a preexisting nonconforming use and that the court improperly substituted its opinion for the board's conclusion on that issue. Because we find in favor of the defendants and determine that under the facts and circumstances, the court improperly concluded that they could not expand their building or structure vertically, we reverse that portion of the judgment and need not

[8] General Statutes § 8-13a (a) provides: "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."

address the claims pertaining to the settlement agreement and § 8-13a. We also conclude that the court properly determined the parking issue and affirm that portion of the judgment.

I

We take up initially the issue[9] of whether a property owner, under the zoning regulations as interpreted by the board, is allowed to expand vertically a building or structure that is nonconforming as to its location over the setback line if the vertical[10] expansion does not go beyond the building footprint. The major thrust of the defendants' claim is that under the zoning ordinance, the board properly could have determined that placing the temporary and permanent enclosure[11] over the existing deck was not, as the plaintiffs claim, an illegal extension of a nonconforming structure.

As a preliminary matter, we set forth the standard of review. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the

[9] Because the issue is essentially common to the first, second and third cases, our discussion and analysis in part I applies to all three cases unless otherwise noted.

[10] The plaintiffs, on the other hand, claim that the defendants' expansion on the restaurant deck not only is an impermissible vertical expansion, but also an impermissible horizontal expansion of the nonconforming use of the deck. As we will discuss, we do not agree with the plaintiffs with respect to their claim of a horizontal expansion.

[11] Although the issue as stated by the plaintiffs refers only to the temporary enclosure, we treat it as also encompassing the matter of the defendants' application for the permanent enclosure (third case). That did not disadvantage the plaintiffs, either in their briefing or at oral argument. Actually, in urging us to adopt the court's analysis of that issue, the plaintiffs in their brief clearly state that "[t]he trial court's analysis [of the temporary enclosure] applies a fortiori to the proposed *permanent* deck enclosure." (Emphasis added.)

board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court." (Citations omitted; internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision [in this case, the plaintiffs]." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269–70, 588 A.2d 1372 (1991); see also *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002). "Courts are not to substitute their judgment for that of the board . . . ." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 206, 658 A.2d 559 (1995); *Whittaker* v. *Zoning Board of Appeals*, 179 Conn. 650, 654, 427 A.2d 1346 (1980); *Hoffer* v. *Zoning Board of Appeals*, 64 Conn. App. 39, 41, 779 A.2d 214 (2001).

Because the court, in interpreting the regulations, made conclusions of law in its memorandum of decision, our review is plenary. *Ammirata* v. *Zoning Board of Appeals*, 65 Conn. App. 606, 610, 782 A.2d 1285, cert. granted on other grounds, 258 Conn. 938, 786 A.2d 425 (2001); *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 139, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999). "[W]e [therefore] must decide whether the conclusions are legally and logically correct and supported by the facts in the

record." *Fleet National Bank* v. *Zoning Board of Appeals*, supra, 139; see also *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 604.

The four cases before us were consolidated into a single appeal that was the subject of a public hearing before the board on June 4, 1998. After that hearing, the board passed the following two motions. The first motion encompassed the issues in the first, second and third cases[12] and was as follows:

"[Acting chairwoman Anne] Greismer moved that the appeal be sustained on the basis that a regulation, specifically § 118-800 (D) (1), is sufficiently ambiguous that the interpretation could be realistically decided in favor either way, and that indicates that the relief must go to the property owner until such time that this regulation is clarified." The motion passed unanimously. The second motion encompassed the issue in the fourth case[13] and was as follows: "Mrs. Greismer moved, based on the board's discussion, to grant the appeal, which effectively negates [the officer's] notice of violation and order to cease and desist with regard to the use of the front setback area for parking purposes."

The court stated in its memorandum of decision: "Implicit in the board's decision is its determination that § 118-800 (D) (1) does not prohibit the erection of either the retractable enclosure or a permanent enclosure on the deck." The court, therefore, took the position that although the plaintiffs had challenged the board's decision on several grounds, the board assigned only a single ground for its decision—the ambiguity of § 118-800 (D) (1) of the zoning regulations. Accordingly, it decided that the only issue before it, with respect to

---

[12] Those appeals involve the temporary enclosure and the permanent enclosure.

[13] That appeal involves the parking issue.

the first three cases, was the proper interpretation of that regulation, i.e., § 118-800 (D).

On appeal, the defendants claim that the board, in effect, correctly decided that the zoning regulations permit a property owner to expand vertically a building or structure that is nonconforming as to its location or setback lines[14] as long as the construction does not go beyond the existing building footprint. The defendants claim that there was thus no illegal extension of the nonconforming use and that case law supports their position.

The plaintiffs, on the other hand, claim in their brief that the court "properly found that the defendants' retractable and later frame enclosure of [the] nonconforming waterfront deck was an illegal *expansion or alteration* of a nonconforming structure in violation of § 118-800 of the Norwalk zoning regulations."[15] (Emphasis added.)

---

[11] Although the defendants use "setback lines" in the plural, it is clear to us that the only setback line to which the construction is nonconforming is the rear setback. The plaintiffs suggest that it is nonconforming also as to side "setback" lines. That suggestion, however, has not been proven or demonstrated by the plaintiffs.

[15] During oral argument before this court, the plaintiffs emphasized the term "altered," which appears twice in § 118-800 (D) (1) of the zoning regulations, and claimed that that part of the ordinance was violated by the deck enclosures. In addition, the plaintiffs claim that the defendants violated the "enlarged" limitation of the ordinance. When asked if the claim of alteration was made "anywhere" in the prior proceedings, the plaintiffs' counsel indicated that it had been, but not in so many words, and that our plenary review permits this court to address the claim. We do not agree.

We have examined the court's memorandum of decision carefully and find no indication that the court construed that term. Quite to the contrary, the court's memorandum of decision is rife with references to the "enlarged" part of § 118-800 (D) (1). Those include the plaintiffs' claims of "enlargement" so as to violate § 118-800 (D) (1) where the court stated that "[i]n the final analysis . . . the [temporary] and perforce the permanent enclosure constitutes an impermissible *expansion of the nonconforming deck*." (Emphasis added.) The court did not analyze the "altered" prong of § 118-800 (D) (1) or base its conclusion on that portion of the regulation.

It is true that the plaintiffs discuss in their brief the "altered" prong,

In making their claim, the plaintiffs maintain that not only did the court correctly conclude that the placement of the temporary enclosure increased the extent to which the structure did not conform to the regulations in violation of § 118-800 (D) (1), but also that the court "properly reviewed the [board's] interpretation of . . . § 118-800 (D) (1)." In addition, they claim that "[t]he *extent* or magnitude to which the structure is nonconforming is increased both by horizontally expanding a building into the rear yard setback and by rendering a nonconforming structure a nonconforming [building]." (Emphasis in original.) The plaintiffs further claim that the authority cited by the defendants from foreign jurisdictions is not at all persuasive as to the defendants' claim. Moreover, the plaintiffs argue that our recent case of *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 597,[16] is one that has "no bearing on the

although not in depth. Their brief does recognize that the "altered" portion of the ordinance is intended to be separate and distinct from the "enlarged" portion of the ordinance. For example, the plaintiffs argue that "[h]ad the ordinance been intended to only limit expansions, then it need not have mentioned alterations, which may or may not amount to an expansion of any specific, nonconforming characteristic." It is evident that the "use of the disjunctive 'or' between the two parts of the [ordinance] indicates a clear legislative intent of separability." *State* v. *Payne*, 240 Conn. 766, 773, 695 A.2d 525 (1997); *State* v. *Sul*, 146 Conn. 78, 89, 147 A.2d 686 (1958).

We do not believe that plenary review encompasses review of a claim not appropriately—if at all—raised at trial. It also does not encompass a claim *never decided by* the trial court. "[B]ecause these issues were not adjudicated in the trial court, the record before us is incomplete." *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 718, 519 A.2d 49 (1986); *Brehm* v. *Brehm,* 65 Conn. App. 698, 702–703, 783 A.2d 1068 (2001); cf. *State* v. *Dabkowski,* 199 Conn. 193, 198, 506 A.2d 118 (1986) (claims "functionally made and the record [was] adequate for [appropriate] review"); *Salmon* v. *Dept. of Public Health & Addiction Services,* 259 Conn. 288, 305, 788 A.2d 1199 (2002) (claims reviewed where Supreme Court "persuaded" plaintiff "functionally raised [the] issue in [*both*] the administrative and trial court proceedings" [emphasis added]).

[16] The *Doyen* case is not referred to in the defendants' brief, which was filed in this court on November 5, 2001. The *Doyen* opinion was not officially released until January 15, 2002, some time before the plaintiffs' brief was filed on March 4, 2002. The defendants, however, in their reply brief filed March 20, 2002, discuss *Doyen* extensively.

result [in this case] for several reasons," which they discussed in their brief. We discuss those claims in greater detail in our analysis that follows.

In its review, the court noted that implicit in the board's decision was the determination that § 118-800 (D) (1) of the zoning regulations did not prohibit the erection of either the temporary or permanent enclosure of the deck. The validity of that observation is to be made in the context of any other applicable portion of the zoning regulations. The principal issue before us is the interpretation of certain provisions of the zoning regulations. We therefore must decide whether the court's conclusions are legally and logically correct and are supported by the facts in the record. See *Fleet National Bank* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 139.

In doing so, we must determine whether the court could have concluded, as it did, that the ultimate result of the board in deciding that there was no violation of the zoning regulations, as claimed, was legally and logically incorrect on the facts in the record and the applicable law.

At this juncture, we recognize that there is nothing in the record or the briefs that demonstrates that § 118-800 (D) (1) of the zoning regulations has ever been subjected to prior judicial scrutiny. That brings us within the general rubric that "the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." *Schlumberger Technology Corp.* v. *Dubno*, 202 Conn. 412, 423, 521 A.2d 569 (1987). "[I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698, 784 A.2d 354 (2001).

In deciding the issue, we are aware that "[a] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997).

We also note that "[a] court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance." (Citation omitted; internal quotation marks omitted.) Id. "The words [employed] in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." *Coppola* v. *Zoning Board of Appeals*, 23 Conn. App. 636, 641, 583 A.2d 650 (1990). "The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant." *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 46 Conn. App. 571; see also *Pelliccione* v. *Planning & Zoning Commission*, 64 Conn. App. 320, 336, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001). "A statute should be construed so that no word, phrase or clause will be rendered meaningless." *C. White & Son, Inc.* v. *Rocky Hill*, 181 Conn. 114, 122, 434 A.2d 949 (1980); see also *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 424, 815 A.2d 94 (2003). "Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legisla-

tive body." *Spero* v. *Zoning Board of Appeals*, supra, 217 Conn. 441.

With those principles in mind, we turn to § 118-800 (D) (1) of the zoning regulations,which the court correctly recognized must be considered with § 118-800 (A) as well as other sections of the zoning regulations. Section 118-800 is found in article eighty, entitled, "General Regulations," and pertains specifically to "Nonconformities." Section 118-800 (A) provides: "Purpose and intent. There exists throughout Norwalk lawful lots, structures and uses of land and structures which are nonconforming because they do not comply with these regulations as originally adopted or subsequently amended. *The purpose of this regulation is to permit nonconformities to continue, but to strictly limit the extent to which nonconformities may be established, continued, expanded or altered.* This regulation is intended to bring nonconforming uses into conformity with the regulations as quickly as the fair interests of the parties will permit." (Emphasis added.)

A

Preliminarily, we examine the court's analysis of § 118-800 (D) (1) of the zoning regulations in light of the claims of the parties. The defendants in their principal brief maintain that the regulation "contains an affirmative statement that a nonconforming structure may be enlarged or altered" and that "[t]he limitation on this enlargement is contained in the first sentence of § 118-800 (D) (1)." They argue that the "alteration is permissible under the regulation so long as it does not result in [an increase in] the extent to which the structure does not conform to these regulations and that extent of the nonconformity [in this case] is simply and clearly the measurement of the distance between the [rear] setback line and the existing deck." Thus, the defendants claim that the nonconformity violates no

other zoning regulation except the rear setback line. They stress the applicability of *Doyen* to the present case, contending that the plaintiffs have not provided any meaningful distinction of *Doyen*.

The plaintiffs, in urging the affirmance of the court's decision, argue that the court correctly interpreted the regulations, that the "extent or magnitude" by which the structure is nonconforming was increased "both by horizontally expanding a building into the rear yard setback and by rendering a nonconforming structure a nonconforming [building]." They further contend that "the purpose of [§ 118-800] is to permit nonconformities to continue, [and that the regulations intend to] strictly limit the extent to which nonconformities may be established, continued, expanded or *altered*." (Emphasis in original.) They also argue that the nonconformity was increased "by exchanging an open deck that [was] already located a mere eighteen inches from the water for an opaque building, thereby blocking visual access and frustrating the principles of the business three zone."

The court began its analysis by stating that the issue of statutory interpretation it had to decide was "whether § 118-800 (D) (1) and (A) prohibit the erection of an enclosure on a setback nonconforming deck which extends both vertically to ceiling height and horizontally[17] the entire width of the deck." The court, as its

---

[17] That does not state the issue quite accurately. The plaintiffs claim in their brief that "the extent or magnitude to which the structure is nonconforming is increased both by *horizontally* expanding a building into the rear yard setback by rendering a nonconforming structure a nonconforming [building]." (Emphasis added.) The court, however, did not actually find that there was an impermissible horizontal extension of any nonconformity. Instead, the court found that "[n]o portion of the enclosure protrudes beyond the structural limits of the deck." Our review of the record also reveals that there was no evidence of any horizontal extension. First, not only is there no such extension "*into* the rear yard setback," but there is no horizontal extension anywhere of the legal nonconformity admittedly existing.

Moreover, the plaintiffs, in their "analysis," did not raise the claim of "horizontal extension" above the level of an assertion. Further, in their

starting point, focused on § 118-800 (D) (1), which it maintained prohibited the enlargement if the result is extension of the nonconformity. The court then turned to the defendants' claim that the "prohibition" contained in § 118-800 (A) "relaxes" the prohibition in § 118-800 (D) (1) by "contemplating" the expansion of nonconformities such as the deck. The court "found" that § 118-800 (A) is "nothing more than a declaration of existing law with regard to the preservation of nonconforming uses and structures." Although that may be true as a general statement, the court, unlike the effect of the board's decision, proceeded to regard § 118-800 with such rigor that it gave hardly gossamer weight to the "window of tolerance"; *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 605; contained in that ordinance. To be sure, § 118-800 (A) provides in relevant part that its "purpose . . . is to permit nonconformities to continue," but in the same sentence, immediately after that declaration of purpose simply to allow nonconformities to continue, the regulation's drafters placed language that clearly is declarative that this intent is not absolute and that under appropriate circumstances, a nonconforming structure may be enlarged. The drafters did so by including the clause that states: "[B]ut to strictly limit the extent to which nonconformities may be established, continued, expanded or altered. . . ." It is quite apparent that there was an express intent to create an exception to the stated purpose of simply permitting nonconformities to continue through the use of the language, "but to strictly limit the extent to which nonconformities may be established, continued, expanded or altered. . . ."[18]

---

disavowal of *Doyen* as dissimilar to this case, they do nothing about urging a "horizontal extension" as another distinguishing factor from this case. We therefore confine our analysis to the "vertical" claim of extending the legal nonconformity that the defendants claim was decided by the board appropriately.

[18] An interesting analysis of the conjunction "but" applicable here discloses the following: "The word 'but' is used conjunctively in the sense of 'on the contrary,' and connects two clauses of the sentence in such a way as to

Norwalk Zoning Regs., § 118-800 (A). We are aware that "[w]hen a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent." (Internal quotation marks omitted.) *Dreher* v. *Joseph*, 60 Conn. App. 257, 262, 759 A.2d 114 (2000); see also *Kulis* v. *Moll*, 172 Conn. 104, 110, 374 A.2d 133 (1976); *Willoughby* v. *New Haven*, 123 Conn. 446, 454, 197 A. 85 (1937). Nevertheless, the exception must be considered. We also note that § 118-800 (D) contains a similar exception that allows a nonconforming structure to be "enlarged or altered" as long as the extent to which the structure does not conform to the regulations is not increased. With those exceptions contained in § 118-800 (A) and (D) (1), we have an affirmation of the application of the provisions in all other cases not excepted. Thus, the exceptions confer on the board the right to act within the limitation of the exceptions. That "window of tolerance"; *Doyen* v. *Zoning Board of Appeals*, supra, 605; was available to the board in an appropriate case. The court gave little, if any weight, to the exceptions, which, after all, were the basis for the board's decision.

B

In an appropriate case, § 118-800 (D) (1) allows a "structure" to be "enlarged" or "altered," provided the enlargement or alteration "conforms to these regulations." Norwalk Zoning Regs., § 118-800 (D) (1). We note at this point that the court acknowledged in its memorandum of decision that "no claim has been made [by either party] that the enclosure will violate any of the bulk restrictions except rear yard setback." Yet, the

make the last one modify or give meaning to the first, indicating that that which follows is an exception to that which has gone before. It further indicates that that which has gone before does not control that which follows." *Northwestern Bell Telephone Co.* v. *Wentz*, 103 N.W.2d 245, 253 (N.D. 1960). Such a rationale fairly applies to the case before us.

court stated that "[n]evertheless, bulk *must* be considered in connection with the express language of § 118-800 (A) and (D) (1)." (Emphasis added.) Further, despite no claim having been made by the parties as to any violation of bulk restrictions, the court stated that "[i]ncreasing the bulk of a nonconforming structure by the addition of walls and a roof frustrate and defeat that policy by making the structure more permanent and difficult to remove." That is inappropriate, as it amounts to putting a claim into the case when, admittedly, it was not even made by the parties. See *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 328–29, 589 A.2d 351 (1991). Because there was no claim by either party before the board or the court as to any violation of bulk restriction except rear yard setback, it is not in this case. It is one thing for the court to state that the board's "ambiguity" reason was the basis of its action and that that really was no reason at all for the board's interpretation, and, therefore, that the court had to search the record itself. It is, however, quite something else for the court to opine sua sponte on a claim that neither party made. It is one thing to search the record where appropriate. It is quite something else and inappropriate for the court to assign a reason for its action on a *claim* that was never made in the record by the parties and which the court specifically acknowledged was never made. "It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5 . . . ." (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 796, 732 A.2d 207 (1999).

We therefore do not review any "bulk" determination made by the court except that which appropriately was presented.

## C

The court went on to state that the regulations do not define either "structure" or "building." It stated that "[o]ur courts have defined 'structure' as 'any production or piece of work artificially built up, or composed of parts and joined together in some definite manner.' *Hendryx Co.* v. *New Haven*, 104 Conn. 632, 640, 134 A. 77 (1926)." The *Hendryx Co.* case, we point out, concedes that this definition of "structure" is one "[i]n its widest sense . . . ." Id., 640.[19] Citing Webster's New World Dictionary, Second College Edition, the court, in the present case, observed that " '[b]uilding' is defined as 'anything that is built with walls and a roof.' " It then stated that "[b]y itself, the unenclosed deck is clearly a structure, not a building." Nevertheless, the court stated, "once it is enclosed with a wall and roof, it becomes a building. Such a transformation changes the very nature of the object and enlarges its bulk." It was, therefore, the court's opinion that it could not "envision a more fundamental improvement to a structure than the addition of a roof and walls," and it concluded that "the retractable enclosure and . . . permanent enclosure constitute an impermissible expansion of the nonconforming deck."

We do not agree with the court and the plaintiffs that the temporary and the permanent enclosure converted

---

[19] That definition in *Hendryx Co.* (which contains other definitions of "structure") occurred in a case in which the plaintiff, which owned manufacturing property on both sides of a public street in New Haven, built without a building permit, an overhead bridge from one building on one side of the street to its building on the other side of the street. *Hendryx Co.* v. *New Haven*, supra, 104 Conn. 638. The case involved the construction of a New Haven city ordinance that required a building permit. Id., 639. The ordinance provided in relevant part: "(1) Before the erection, construction or alteration of *any building or structure* . . . there shall be submitted to the Building Department an application for a [building] permit . . . ." (Emphasis added; internal quotation marks omitted.) Id., 635. Interestingly, we note, the *Hendryx Co.* court stated that there are "many forms of structures which are attached to buildings . . . ." Id., 641.

the existing nonconforming structure into a nonconforming building. At the outset, we note that the plaintiff's have conceded in their brief that "[t]he defendants *attached* an open wooden deck *structure* to the rear of the *building* sometime after mid-1992 within the then existing setback . . . ." (Emphasis added.) The floor level of the deck is several feet above the ground, and the floor level is at the same level as the first flooring of the main part of the restaurant building. Given those circumstances, the deck is not a separate structure, but is, as the defendants claim, part of the restaurant. Except for the vertical expansion by enclosing the deck, there has been no expansion of the building or deck itself since 1996 or thereafter.

We do not look favorably on the plaintiffs' argument that the enclosure turned a nonconforming structure, the deck, into a nonconforming building and that there is a distinction between them as to the regulation of nonconformities in § 118-800 of the zoning regulations. In advancing that argument, the plaintiffs refer to § 118-100, which is in article ten of the regulations and is entitled, "Definitions." That article contains, inter alia, definitions of "nonconforming building or use"[20] and "nonconforming structure."[21] In its statutory interpretation, the court never referred to the definition section (article ten) of the regulations, but confined itself to § 118-800 (A) and (D) (1) in article eighty of the regulations in which the latter section appears. More to the point, there are five subsections under § 118-800 (A),

---

[20] Section 118-100 of the Norwalk zoning regulations defines "nonconforming building or use" as "[o]ne that does not conform with the regulations of the zoning ordinance of the zone in which it is situated." There also is a separate definition of "nonconforming use."

[21] Section 118-100 of the Norwalk zoning regulations defines "nonconforming structure" as "[a] structure, the size, dimensions or location of which was lawful prior to the adoption or amendment of a zoning regulation, but which fails by reason of such action to conform to the present requirements of the zoning district in which it is located."

entitled "Nonconformities," and nowhere in any of those subsections, including § 118-800 (A) and (D) (1), does the term "building" appear. We keep in mind that the only nonconformity that exists and that was established on the record is the location of a part of the deck area over the rear setback, and that a restaurant is a permitted use in that zoning district. The regulations, specifically § 118-800 (D) (1), do not address a nonconforming "building," but only a nonconforming "structure." We believe, therefore, contrary to the court's conclusion, that the deck with either the temporary or permanent enclosure is a "nonconforming structure" under § 118-800 (D) (1) as to its location. Since 1992, the deck has been part of the building that has been nonconforming as to the extension of the deck, whether enclosed or unenclosed, only as to the rear setback line. There has not been, as the court concluded, a transformation of a "nonconforming structure" into a "nonconforming building."

### D

That brings us to the question of whether the deck, which is attached to and part of the building, properly can be expanded vertically where that expansion does not involve any further extension beyond the existing building footprint. In resolving that question, the effect of § 118-800 (D) (1) of the zoning regulations is focal. The resolution of that issue clearly implicates the *Doyen* case, which, as we previously stated, was not decided until after the trial court decided the present case.[22] *Doyen* is the first appellate decision in this state on the right of a property owner to make a vertical expansion

[22] See footnote 16. After reviewing the applicable case law, including Connecticut cases and those from other jurisdictions, the court concluded that there did not exist in Connecticut any controlling authority on whether an enlargement that extends vertically and horizontally over a setback nonconforming structure, but does not encroach farther into the setback, constitutes an unlawful expansion of the nonconforming structure.

of a building or structure that is nonconforming only as to its location.

In *Doyen*, the property owners applied for a zoning permit to construct an addition that "contemplated a vertical expansion [of their residence] that would not exceed the 'existing structural footprint' of their house." *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 599. "The proposed addition would extend five to six feet over, but not beyond, the existing deck on the side of the house. The house, which was constructed prior to the adoption of the Essex zoning regulations in 1966, is a legally nonconforming structure in that a portion of the foundation and the deck attached to the same side of the house extend into the twenty-five foot side setback area required by the regulations." Id. The Essex zoning board of appeals upheld the granting of the permit by the town's zoning enforcement officer, which the trial court reversed. Id., 598. We subsequently reversed the court's decision. Id., 612.

The parties differ as to the significance of *Doyen* to the case now before us. The plaintiffs greatly minimize the applicability of *Doyen* by attempting to distinguish it, while the defendants do much the opposite. The plaintiffs in their brief claim that "[f]irst and foremost, the posture and perspective of the [ordinances] is nearly opposite and their meanings are distinct." They argue that the Essex regulation "imbue[d]" that town's zoning board of appeals with discretion, while the Norwalk regulation limits such discretion. The plaintiffs further claim that the Norwalk regulations *prohibit* the expansion of nonconforming structures when the result would be "an increase in the *extent to which* the structure does not conform to these regulations . . . ." (Emphasis in original.) See Norwalk Zoning Regs., § 118-800 (D). Moreover, the plaintiffs claim that the deck enclosure would replace a nonconforming structure with a building that encroaches well into the rear

setback, that it would impair visual waterfront access and that it "would defy the general purposes of the regulation of nonconformities." They also point out that the Essex zoning board of appeals had no waterfront business language to consider, no defined distinction between nonconforming structures and buildings, and, "most importantly, no prohibition against allowing expansions where to do so would encroach upon other regulations even if the existing nonconforming characteristic was unchanged." They then observe that unlike the situation in *Doyen*, the court's decision in this case was not made against a background of consistent interpretation by the local zoning authorities, but rather was made in light of opposing interpretations from the two Norwalk zoning enforcement officers whose interpretations were given.

We now turn to the provision of the Essex zoning regulations that was highlighted in *Doyen*. Section 50D[23] of those regulations provides in relevant part: "No use of any land or improvement having a nonconforming characteristic, and no improvement having a nonconforming characteristic, shall be enlarged, extended, or expanded except in conformity with these Regulations. No nonconforming use or characteristic of any land or improvement shall be enlarged, extended, or expanded. . . ." (Internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 600 n.2.

We do not agree with the plaintiffs, as they argued before us, that the difference between the Norwalk and

[23] In *Doyen*, we did not analyze § 50D in isolation, but in the context of the Essex zoning regulations, including the preamble in § 10B, which provides in relevant part: "[I]t is a fundamental principle of zoning law that nonconformities are not to be expanded and that they should be abolished or reduced to conformity as quickly as the fair interests of the parties will permit. This principle is declared to be the intent of these regulations." (Internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 605.

Essex regulations is "quite stark," with the Norwalk regulation being "more restrictive" while the Essex regulation "imbue[d]" that town's zoning board of appeals with discretion, unlike the Norwalk regulations, which limits such discretion. The language of the Norwalk and Essex regulations is somewhat similar. As we have indicated, § 118-800 (D) of the Norwalk zoning regulations includes an exception or exemption to the general purpose of permitting only nonconforming structures to continue as set out in § 118-800 (A). The same is true with reference to § 50D of the Essex regulations, which provides that no nonconformity "shall [not 'may'] be enlarged, extended or expanded except in conformity with these Regulations. . . ." (Internal quotation marks omitted.) Id. On the other hand, § 118-800 (D) (1) of the Norwalk zoning regulations, in its first sentence, provides in relevant part that "[a] nonconforming structure *shall* not be enlarged or altered if . . . ." (Emphasis added.) The second sentence provides in relevant part that "[a] nonconforming structure *may* be enlarged or altered, provided that the enlargement or alteration conforms to these regulations." (Emphasis added). Norwalk Zoning Regs., § 118-800 (D) (1). The discrete use of "shall" and "may" in § 118-800 (D) (1) clearly evidences the drafters' intent to authorize the board to enlarge or alter a nonconformity that conforms to the regulations. "The words shall and may must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." (Internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission,* 208 Conn. 267, 304–305, 545 A.2d 530 (1988); *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust,* 58 Conn. App. 45, 53, 752 A.2d 65, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). If anything, the regulation affirmatively confers that authority on the board. It is,

therefore, as the defendants claim, more permissive than the Essex regulation.[24]

E

Something should be said about the plaintiffs' argument in their brief that in *Doyen*, the Essex zoning board of appeals "had no waterfront business zone language to consider . . . ."[25] That statement is correct. Just what consideration of that waterfront aspect, if any, of the subject property was before the Norwalk board and what the court decided about any claims concerning those considerations is not disclosed by the record before us. We hasten to add that we are aware that § 118-530 (A) of the zoning regulations, entitled "Purpose and Intent," includes the following provision: "Development [in business three zone] shall be in a manner consistent with the goals and policies of the Coastal Management Act,[26] and public access to and along the waterfront, including visual access, shall be retained or provided." In argument before this court, the defendants maintained that despite the plaintiffs' claim on distinguishing *Doyen* from this case, the Essex zoning board of appeals

[24] Parenthetically, in the context of "permissiveness", we note that § 118-800 (C) (4) of the Norwalk zoning regulations provides in relevant part that "[a] nonconforming use of land or structure *may be changed to another nonconforming use*" under certain circumstances. (Emphasis added.)

[25] The subject location is in a business three zone and is situated right on what was referred to as the Five Mile River. At oral argument before this court, the defendants maintained that the Five Mile River was S shaped, that their restaurant was located at the bottom of the "S" and that there was no blockage by the enclosure to a view of the river.

[26] See General Statutes § 22a-90 et seq. That legislation, known as the Coastal Management Act, provides an additional level of regulation besides conventional land use controls in the coastal area. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 12.3, p. 281. The Coastal Management Act "was expressly concerned with providing uniform standards for evaluating the impact of coastal development, while allowing municipalities to maintain local control over the process." *Read* v. *Planning & Zoning Commission*, 35 Conn. App. 317, 324, 646 A.2d 222 (1994).

had no "waterfront business zone language to consider" and that we need not consider that claim because it was never raised before the Norwalk board or in the court. In addition, the defendants claim that there is nothing in the record to suggest that there was any blockage of a view of the Five Mile River by the enclosure. The court's decision, we observe, also did not even mention, let alone discuss or decide, the relevance of that legislation. Despite that, the plaintiffs at oral argument claimed that we can review the Coastal Management Act claim.

The circumstances of this case do not persuade us to resolve a claim that was not raised in, let alone decided by, the trial court. Therefore, given that, it seems unfair for us to discuss that matter. As we have stated, "[i]t is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at trial). . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by trial court are not properly before appellate tribunal) . . . ." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, supra, 252 Conn. 170–71.

Additionally, in their attempt to distinguish *Doyen* from this case, the plaintiffs correctly argue that *Doyen* was decided against a background of consistent interpretation of the Essex regulations by its zoning board of appeals, which is not present in this case. In the case before us, the two Norwalk officers who interpreted the Norwalk regulation came to two completely different and inconsistent results. That, however, only very

minimally advances the plaintiffs' claim of the inapplicability of *Doyen.*

Next, with reference to distinguishing *Doyen* from this case, the plaintiffs assert that the Essex zoning board of appeals, unlike the Norwalk board, did not have a regulation that made a defined distinction between nonconforming structures and buildings. That is a puzzling basis on which to advance a valid distinction. The Norwalk regulations do not have a "defined distinction" between nonconforming structures and buildings. The court, in its analysis, honed in on § 118-800 (D) (1) of the zoning regulations, captioned "Nonconforming Structures," which does not define nonconforming structures, and § 118-800 (A), captioned "Nonconformities." As we have discussed, the court, in construing the former provision, used the definition of "structure" employed in *Hendryx Co.* v. *New Haven,* supra, 104 Conn. 640, which appeared in a building permit ordinance of the defendant city of New Haven. In defining[27] the word "building," the court used a dictionary definition. Our point here is that we simply cannot state, as the plaintiffs imply, just what "defined distinction" did in fact exist in the Norwalk regulations. Accordingly, the plaintiffs' claim fails to contribute to or to advance the argument that *Doyen* is distinguishable from the present case.

Finally, the plaintiffs claim in their brief that "most importantly," the Essex zoning board of appeals did not have before it any "prohibition against allowing expansion where to do so would encroach upon other regulations even if the existing nonconformity charac-

---

[27] We note that the definition of the word "building" does not appear *anywhere* in § 118-800. We therefore assume that although the court did not reference a definition of that term, it was using the "definition" in § 118-100, captioned "Definitions," which provides: "Nonconforming building or use—one that does not conform with the regulations of the zone in which it is situated."

teristic was uncharged." The plaintiffs provide no factual or legal analysis for that unsupported assertion, even minimally.

On the applicability of *Doyen* to this case,[28] we conclude, from what we previously have stated, that the plaintiffs have not persuasively distinguished that case so as to bar its applicability to this case. If "persuade" means "[t]o induce (another) to do something"; Black's Law Dictionary (7th Ed. 1999); our cautious examination of *Doyen* and this case under the variant claims made by the parties for *Doyen*'s applicability convinces us that although we do not support the notion that *Doyen* constitutes binding authority, there is, at the very least, persuasive authority for its being applicable. That term should be evaluated in light of the facts that give rise to the opinion. The Supreme Court of Florida in *Ward* v. *Baskin*, 94 So. 2d 859, 860 (Fla. 1957), recognized that "the law is not a mathematically exact science." When defining the term "precedent," Black's Law Dictionary states that "for one decision to be an authority for another [requires] that the facts are alike, or, if the facts are different, that that the principle which governed the first is applicable to the variant facts." (Internal quotation marks omitted.) Black's Law Dictionary, supra. The law is not, as noted, an exact science. As we have seen, the regulations in *Doyen* and in the present case are not the same. The facts in *Doyen* and this case are not identical, but the variant facts still evoke the same legal principles necessary to resolve the issues in both cases. *Doyen* is applicable and, in our view, serves as persuasive authority in this case.

*Doyen* recognized that in a proper case, a vertical expansion of a nonconforming use that is entirely within

---

[28] We do point out that significantly, the plaintiffs, in their claims to distinguish *Doyen*, do not claim that *Doyen* is dissimilar because that case did not involve any horizontal expansion of the nonconformity, whereas they advance a claim of horizontal nonconformity in this case.

the existing footprint of the owners' residences would not violate the Essex regulation on nonconformities. See *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 607. We have demonstrated that the Norwalk regulations, which are more liberal and affirmative than the Essex ordinance, permit a similar result in this case. Although the board's "ambiguous" reason does not articulate such, that still is the legal and practical result of its action. In its memorandum of decision, the court stated that "[i]mplicit in the board's decision is its determination that § 118-800 (D) (1) does not prohibit the erection of either the [temporary] enclosure or permanent enclosure of the deck." That perforce encompassed not only a legal question for the court, but factual determinations by the board. "The legality of an extension of a nonconforming use is essentially a question of fact." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993); *Helicopter Associates, Inc.* v. *Stamford*, supra, 201 Conn. 716. It was, therefore, inappropriate for the court to decide that the board could not have concluded that the regulations were not violated by the proposed vertical expansion entirely within the existing building footprint without any further intrusion on the rear setback line, which was the only existing nonconformity of the deck. In deciding to the contrary, the court inappropriately substituted its judgment for that of the board. Further, we already have discussed the inappropriate nature of the court's action in injecting, in the absence of any claim by the parties, that the enclosure would violate "any of the bulk restrictions except the rear yard setback."[29]

For all of the previously stated reasons, including the applicability of *Doyen*, the judgment must be reversed

---

[29] Again, we point out that no portion of the enclosures goes into or beyond the legally existing rear yard nonconformity.

as to the first, second and third cases, and board's decision in each case reinstated.

## II

We now address the defendants' claim as to the fourth case, which is that the court improperly reversed the decision of the board, which had reversed the officer's order that the defendants cease and desist[30] from using, for parking purposes, certain spaces in front of the restaurant[31] building because the board properly could have found, on the evidence, that such parking spaces were a preexisting nonconforming use. The defendants maintain that in reversing the board's decision as to parking, the court improperly substituted its opinion for that of the board, which the defendants claim did not abuse its discretion. The court concluded that the board had acted illegally and in abuse of its discretion in reversing the officer's decision. We find that the court properly sustained the plaintiffs' appeal.

At this point, we mention the defendants' assertion in their principal brief that the solution of the parking issue is a matter for the "legitimate exercise of the police powers of the municipality and should not be viewed as a zoning issue at all." We do not agree, but will address the matter briefly and, in doing so, note that the defendants' analysis is scant, at best, and without legal citation. We need not consider on appeal

---

[30] The cease and desist order also included the officer's order that the defendants remove a certain "stoop" at the front of the restaurant building. The portion of the judgment concerning the "stoop" has not been appealed from. Consequently, the issue is limited to the matter of the parking spaces.

[31] As stated in footnote 1, the board filed a one page brief that "adopts" the defendants' brief "in its entirety" except for two paragraphs of the defendants' principal brief on the parking issue. Those two paragraphs concern essentially the defendants' arguments that the parking issue is not a zoning issue at all, but rather one subject to the legitimate exercise of the police power of the municipality.

The board did not provide an analysis of that issue, but instead left its resolution "to the court and briefs of the remaining parties."

abstract principles that merely are restated, even when they have citations of authority, which these do not, and no attempt is made to apply such authority to the facts of the case. See *Taylor* v. *Hamden Hall School, Inc.*, 149 Conn. 545, 557, 182 A.2d 615 (1962); *Marra* v. *Kaufman*, 134 Conn. 522, 529, 58 A.2d 736 (1948). In any event, we disagree with the assertion of the defendants and believe that parking presents a zoning issue here.

Certain background circumstances may appropriately be set out at this point. Section 118-1220 (J) of the zoning regulations provides in relevant part: "All off-street parking and loading facilities shall be located to the rear of the required setback line as now or hereafter established. The area between the street line and the front setback line, except for vehicle and pedestrian access ways, shall be landscaped with lawns or other appropriate planting."

That regulation became effective on March 1, 1985. The defendants claimed that eight diagonal parking spaces or stalls that extend from the easterly facade facing on Rowayton Avenue, which is the front of the restaurant building, constitute a valid nonconforming use of the front setback area for parking. From the record, it would appear that controversy swirls about the defendants' claim that the present use of that area by the defendants for eight diagonal parking spaces constitutes a valid nonconforming use. The plaintiffs dispute that claim and argue that the defendants' diagonal parking claim has not been proven to be a valid nonconforming use of the front setback area. Specifically, the plaintiffs refer to certain evidence that, prior to 1985, shows three motor vehicles parked parallel to and alongside what was an open porch with "each vehicle facing due south," as the court stated in its memorandum of decision. It is the legal status of the eight diagonal spaces versus the three parallel spaces that is

now in dispute. On March 31, 1998, the officer issued a cease and desist order directing the removal of the eight striped, diagonal parking spaces situated at the front of the restaurant property as being in violation of § 118-1220 (J) of the zoning regulations. The defendants appealed to the board and, after a public hearing, the board reversed the officer's decision. The plaintiffs thereafter appealed to the court from the board's decision.

On appeal, the court considered the evidence that the parking spaces had been in existence since 1985. We note that the defendants do not argue that the court did not consider the evidence on the parking issue, but do strenuously object to the court's conclusion that the evidence does not demonstrate a valid nonconforming use for the eight diagonal spaces.

In its review, the court referred to the testimony of longtime neighborhood residents to the effect that they remembered cars parking in front of the defendants' building as long as they had been there, which would have been several years before 1985, as well as photographs,[32] which apparently predated § 118-1220 (J) and showed parking in front of the building. The court, however, stated that the photographs were "unmistakable in what they show," and pointed out that "[t]hey show only parallel and not diagonal parking. They show at most, three vehicles and not eight."[33]

Further, the court pointed out that the defendants had made "no claim that they had diagonal parking

[32] As to other photographs placed into evidence by the defendants showing neighboring properties with parallel parking at the curb except where the particular business establishment had its own off street parking lot, the court observed that those photographs had little probative value.

[33] The court also determined that "while the front porch of the building was in place, there could have been no diagonal parking because to do so would have required the vehicles to extend the traveled portion of Rowayton Avenue." The front porch was not removed until 1992.

prior to 1985," but rather that parallel parking was the "functional equivalent of diagonal parking." The court rejected that claim. In examining the former parallel parking formulation, the court stated that a 1987 survey map showed the front porch with steps roughly in the center of the restaurant building that extended beyond the front property line and encroached into the street right-of-way of Rowayton Avenue into its traveled portion. The court opined that certainly as to that space, it would have been impossible to have parallel parked within the front setback space because that space was occupied by the porch. Moreover, it determined that the evidence before the board, along with a simple scaling of the width of the building, demonstrated that no more than three automobiles could have parked parallel in front of the building. The court, therefore, concluded that the nonconforming parking that preceded the 1985 amendment of § 118-1220 (J) of the zoning regulations was different both as to number and location, vis-a-vis three parallel spaces versus eight diagonal spaces.

We turn next to the plaintiffs' argument that unless pattern parking is permitted by local ordinances, General Statutes § 14-251 prohibits diagonal vehicular parking on any public highway in the state. The court reiterated that the record did not indicate that Norwalk had such an ordinance. It then determined that it needed no evidence to conclude that any activity that constitutes a violation of our state traffic laws would necessarily produce "a substantially different effect upon the neighborhood from that which existed prior to the change (parallel parking)." The court concluded by sustaining the plaintiffs' appeal in that the court found that the board had acted illegally and abused its discretion. We agree with the conclusion of the court.

We note that Norwalk certainly cannot enact an ordinance that prohibits diagonal parking outside its limits

on the public highway because of § 14-251. It can, however, enact legislation with respect to property within its legitimate control. Long ago, our Supreme Court stated that "[a]n important purpose of zoning is to alleviate traffic congestion." *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 49, 301 A.2d 244 (1972); *Vece* v. *Zoning & Planning Commission*, 148 Conn. 500, 503, 172 A.2d 619 (1961). General Statutes § 8-2 (a) provides in relevant part that "regulations shall be designed to lessen congestion in the streets . . . ." Our Supreme Court has further explained that "[i]t is not the over-all volume of daily traffic, but congestion in the streets, that is, density of traffic, which is referred to in [§ 8-2]." (Internal quotation marks omitted.) *Pecora* v. *Zoning Commission*, 145 Conn. 435, 440, 144 A.2d 48 (1958). General Statutes § 7-148 delegates to all municipalities general police power to enact necessary ordinances for the health, safety and welfare of the community. One of the "more important" powers so delegated has been said, by an acknowledged expert, to set "requirements for off-street parking . . . ." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 7. Parking is a zoning issue here.

We will not indulge in an exegesis on the issue, but simply note that the local regulation here does not conflict with state law. Section 118-1220 (J) of the zoning regulations does not permit something the state prohibits, i.e., diagonal parking by virtue of General Statutes § 14-251. The circumstance that the diagonally parked vehicles are partially parked illegally in the public highway (Rowayton Avenue) does not "sap" the zoning authority from enacting an ordinance as to off street parking of such vehicles on municipal property.

The court characterized the issue as whether the actual nonconformity can lawfully ripen into the present parking configuration. It opined that the board's "undeclared reason" for reversing the decision of the

officer on his parking order was the determination that the scope of the use had not been extended or enlarged impermissibly in violation of § 118-1200 (J) of the zoning regulations.

It is appropriate here to set out certain applicable legal principles to test the propriety of the court's sustaining the plaintiffs' appeal on the parking issue. Initially, we set forth the applicable standard of review. "The legality of an extension of a nonconforming use is essentially a question of fact." *Helicopter Associates, Inc.* v. *Stamford*, supra, 201 Conn. 716; *Guilford* v. *Landon*, 146 Conn. 178, 183, 148 A.2d 551 (1959). "The sufficiency of the evidence to support a finding, however, clearly presents a question of law." *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 331. As we have stated, we examine questions of law under the plenary standard of review. *Ammirata* v. *Zoning Board of Appeals*, supra, 65 Conn. App. 610.

"A [nonconforming] use is merely an existing use the continuance of which is authorized by the zoning regulations." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 693 n.3. Stated another way, it is a "use . . . prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations [were] adopted." *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). "[T]he rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the [relevant] zoning regulations." (Internal quotation marks omitted.) *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981); *Cioffoletti* v. *Planning & Zoning Commission*, 24 Conn. App. 5, 8, 584 A.2d 1200 (1991). To be a nonconforming use, not only must the use be lawful, but it also must "be an *existing use,* [for which the] premises must be so utilized as to

be *known in the neighborhood* as employed for a given purpose." (Emphasis in original; internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 92, 527 A.2d 230 (1987). The requisite use must be actual. The property involved must be so used as to be irrevocably committed to that use. *Lebanon* v. *Woods*, 153 Conn. 182, 197, 215 A.2d 112 (1965); *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 645, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001). "Not every intensification of a nonconforming use constitutes an impermissible extension of such use. See T. Tondro, [supra, pp.] 68–69." *Planning & Zoning Commission* v. *Craft*, 12 Conn. App. 90, 96, 529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). In the *Zachs* case, the court also stated that "[t]here must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance." (Internal quotation marks omitted.) *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 331.

In *Zachs*, our Supreme Court stated that "[i]n deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Id., 332.

In this case, the court stated that there was "scant evidence"[34] in the record concerning any of the *Zachs* factors and that the board "certainly . . . did not give explicit consideration to any of them." It determined that the board permitted "these parking spaces" for the same reason that it permitted the deck enclosure and

---

[34] We read that to mean that the court believed that the evidence supporting the board's decision was not substantial.

service stoop,[35] to wit: "[W]here there is ambiguity in the regulations, the ambiguity must be resolved in the property owner's favor."

After an independent search of the record to determine how, "if at all," as the court stated, the *Zachs* factors had been satisfied, the court stated that the record revealed first that "while the principal use which the parking serves remained unchanged, the accessory use of parking has not only virtually tripled in number but in doing so further frustrates the goal of § 118-1220 (J) to maintain the setback area with 'appropriate planting[s].'" Furthermore, the court decided that the second *Zachs* factor was "unchanged, as the kind of use [parking] was identical." Additionally, the court decided that the third *Zachs* factor involved "an evaluation of the effect of the eight spaces upon the neighborhood," stating that there was little, if any, evidence on that factor except for three color photographs from which the court made some telling observations. The court pointed out that the photographs not only showed vehicles parked in the spaces in question with their rear portions extending into the "traveled [paved portion of Rowayton Avenue]," but also that if "those vehicles were transposed onto exhibit ten, it would become apparent that all but a small portion of all eight vehicles would be parked on Rowayton Avenue with only a small portion of the front of the vehicle being parked on the [defendants'] property."

In reviewing the court's analysis of the *Zachs* factors, we keep in mind the defendants' claim that the present formulation of the diagonal parking should be "continued" as a valid, nonconforming use. As to the first *Zachs* factor, we observe that § 118-1220 (J) of the zoning regulations provides in relevant part that "[a]*ll* off-street parking . . . shall be located to the rear of the required

---

[35] The status of the service stoop is not part of this appeal.

setback line . . . ." (Emphasis added.) The defendants have not demonstrated that their diagonal parking does that. Almost tripling the number of parking spaces impermissibly expands on the former parallel parking formulation. Yes, the use prior to the enactment of § 118-1220 (J) was parking and so was the use after that regulation's enactment; however, almost tripling the number of spaces and using diagonal parking to do so could not appropriately be said truly to reflect the earlier use. That increase from the parallel parking to the diagonal parking was an intensification of the use that was impermissible. We note that as to the first *Zachs* factor, in considering the "extent to which the current use reflects the *nature* and purpose of the original use"; (emphasis added) id., 332; although the purpose remains "parking," the "nature" of it, from the near tripling of vehicles in diagonal parking, has been inappropriately extended. Here, we use "nature" to mean "kind, characture, state of." Webster's Third New International Dictionary. Furthermore, the ordinance also provides in relevant part, and every word of the ordinance must be given meaning, that "[t]he area between the street line and the front setback line, except for vehicle and pedestrian access ways, shall be landscaped with lawns or other appropriate planting." Norwalk Zoning Regs., § 118-1220 (J). The defendants are silent on that portion of the ordinance, not only as to what exists in that area, but as to what it did there, if anything.

As to the second *Zachs* factor, we agree with the court when it stated that the kind of use is identical which, from the context, we take to mean that the earlier and the current use is for parking.

Turning to the third *Zachs* factor, the court's analysis makes a strong point in evaluating the defendants' claim of whether the current activity is within the scope of a valid, nonconforming use. The record evidence showed

that the rear ends of the diagonally parked vehicles extended into the traveled, paved portion of Rowayton Avenue. Additionally, other record evidence demonstrated that all but a small portion of all eight vehicles would be parked on Rowayton Avenue and that this formulation would result in only a small portion of the front of each vehicle being parked on the defendants' property.

The plaintiffs point out that unless permitted by local ordinance, General Statutes § 14-251 prohibits diagonal parking on any public highway in the state. Norwalk has no such ordinance. Given that, the court decided that it needed no evidence to conclude, while aware of the third *Zachs* factor, that a violation of our state traffic laws necessarily would produce an effect on the neighborhood substantially different from the parallel parking that existed prior to the diagonal parking. The defendants' illegal diagonal parking, the court indicated, fairly could be said to have brought about a "substantial" difference in its effect on the neighborhood. The circumstance, as the defendants' claim, that under the diagonal parking formulation, only a small part of the front end of each vehicle is on their property does not bar Norwalk's authority to prohibit that incursion. The "courts allow a zoning authority wide and liberal discretion . . . in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution . . . ." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 518, 636 A.2d 1342 (1994); *Burnham* v. *Planning & Zoning Commission*, 189 Conn. 261, 266, 455 A.2d 339 (1983).

The judgments in the first three cases, involving the vertical expansion, are reversed and those cases are remanded with direction to render judgments affirming

the decision of the defendant zoning board of appeals in each case. The judgment in the fourth case is affirmed.

In this opinion the other judges concurred.