ARTHUR H. JOBERT ET AL. *v.* JOSE R. MORANT ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 8—decided June 11, 1963

*Harry L. Nair,* with whom, on the brief, was *Henry J. Gwiazda,* for the appellants (defendants).

*William F. Mangan, Jr.,* with whom was *Alan A. Green,* for the appellees (plaintiffs).

MURPHY, J. The defendants have appealed from a judgment enjoining them from altering, extending or adding to buildings on property owned by them in a residential zone in New Britain. The buildings have been used in nonconformity with the zoning ordinance since its adoption in 1925. The injunction also ordered the defendants to restore the premises to the condition they were in before alterations were commenced in 1961. The defendants were making the alterations under a building permit issued by the building inspector. The New Britain zoning ordinance prohibits the structural alteration, enlargement or rebuilding of any building or structure or part thereof devoted to a nonconfoming use except by authorization of the common council on recommendation of the board of adjustment. New Britain Zoning Ordinances §§ 2 (a), (i) (1958). The defendants undertook their alterations without applying for or receiving

such authorization. On six occasions from 1948 to 1959, they had made application to the board of adjustment for a special exception or for a change of zone. New Britain Zoning Ordinances §§ 13 (g), 14A (1958). These applications were either denied or withdrawn.

The conclusion of the court that the work which the defendants had done on their property was prohibited by the zoning ordinance is tantamount to a finding that the permit issued by the building inspector was illegal. The inspector had refused to revoke the permit when he was requested to do so by the plaintiffs. He has not been made a party herein.

The plaintiffs are residents and property owners in the immediate vicinity of the defendants' property, which is at 1563 Stanley Street in New Britain. The home of one plaintiff immediately adjoins. That of another is across the street. The third lives about 200 feet away. The part of the defendants' property involved in this action consists of three structural units, each one-story high and fourteen and one-half feet wide. The property adjoins the premises of Central Connecticut State College. A luncheonette and snack bar had been conducted on the property in recent years. Most of the patronage was derived from the students at the college. The lease of the last tenant of the luncheonette premises expired in July, 1961, and they became vacant. The front unit faces Stanley Street and extends about sixteen feet to the rear. It is a store in which food had been served to patrons. Immediately behind it is a patio or breezeway area going back about twenty-seven feet. The roof of the front store extended over this patio to within eight feet of the third unit. The sides of

the patio were open except for vertical studs which supported the roof and except for a horizontal crosspiece, three feet above the ground, from which tin and cardboard signs hung, covering portions of each side. In the patio, two tables with benches afforded accommodations to which patrons could carry, and there consume, the food or beverages purchased in the front store. Patrons used the patio only when the weather permitted; they did not use it when it was raining or otherwise inclement, nor in winter. The third unit, behind the patio, is a store extending twenty feet, ten inches to the rear. It had served as a kitchen; food was prepared there and then was carried through the patio to the front store for service to patrons. The third unit was also used for storage. It contains a lavatory.

When, on application of the plaintiffs, a temporary injunction was issued against the defendants in September, 1961, they were enclosing the patio, extending the roof over it and improving the premises to provide a place for their son to operate a restaurant business. The purpose of enclosing the patio was to give protection from the elements, attract more patronage, allow year-round use of the patio area, and make it possible to keep the business open later at night.

The court correctly concluded that the alterations constituted an unauthorized extension of a nonconforming use which was prohibited by the zoning ordinance. *Guilford* v. *Landon,* 146 Conn. 178, 183, 148 A.2d 551; *State* v. *Perry,* 149 Conn. 232, 235, 178 A.2d 279; see also *Salerni* v. *Scheuy,* 140 Conn. 566, 570, 102 A.2d 528. The expanded facilities which would result if the terminal buildings were connected by an enclosed patio would tend to harmfully affect the value of the nearby residential prop-

erties, including the properties of the plaintiffs, because the increased patronage of the luncheonette would create noise, traffic problems and other conditions detrimental to the neighborhood. The conclusions of the court that it was reasonably probable that the value of the plaintiffs' properties would be decreased and that the plaintiffs would suffer injury special and peculiar to them if the defendants were permitted to proceed with, complete and utilize the structure contemplated by the alterations, undertaken under a permit unlawfully issued, have not been successfully attacked. The court was warranted in issuing a permanent injunction. Furthermore, the altered structure, although not in itself a nuisance, could presumably become one under the rule set forth in the two cases of *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 484, 138 A. 483, and 110 Conn. 130, 137, 147 A. 513.

There is no error.

In this opinion the other judges concurred.