[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
On February 24, 1995, the plaintiffs, David Niesyn, Karin Niesyn, and Frank Healy (the plaintiffs), initiated this action by filing an application for a temporary injunction seeking to prevent the defendant, Regional Network of Programs, Inc. (Regional), from continuing construction and/or making renovations to the third and fourth floors of a homeless shelter.[1] The plaintiffs also sought to refrain Regional from using those floors to shelter the homeless. In addition to the temporary injunction, the plaintiffs filed a three-count complaint requesting a permanent injunction, alleging a violation of their due process rights by the defendant City of Bridgeport (Bridgeport), and claiming that the conduct of the defendants constituted a nuisance. Regional has moved to dismiss this action on the ground that the plaintiffs failed to exhaust their administrative remedies. The plaintiffs allege the following facts in their complaint.
In count one, the plaintiffs allege that on or about March 23, 1994, the Bridgeport Building Department (BBD) issued a building permit to Regional. The building permit permitted Regional to renovate and add apartments to the third and fourth floors of a building located at 392 Prospect Street, Bridgeport, Connecticut. This building, known as "Prospect House," is used as a shelter for homeless persons, which use constitutes operating a "Rooming House", under the Bridgeport Zoning Code. The plaintiffs claim that BBD's issuance of the permit was an ultra vires act in that Prospect House is located in a Residence B Zone, and the building does not meet the mandated set back or off-street parking requirements for the operation of a Rooming House in a Residence B Zone. Under the Bridgeport Zoning Code, a variance was therefore, required from the Bridgeport Zoning Board of Appeals (ZBA) before a building permit could be issued. A variance (the "First Variance") was granted by the ZBA on August 8, 1983, permitting Regional to establish and construct a homeless shelter or rooming house with fifty-five rooms. The First Variance was filed in the Town Clerk's office on or about September 14, 1983. Pursuant to the First Variance, construction on Prospect House commenced, but only the first and second floors, or approximately twenty-five rooms, were completed at the time construction ceased.
Subsequently, the ZBA granted Regional another variance (the "Second Variance") in response to a January 31, 1989 application. The fifty-five room expansion requested by the Second Variance application was not undertaken and the Second Variance lapsed by operation of time.
Under the Bridgeport Zoning Code, variances terminate if not exercised within six months of the date on which they are granted, and become inoperative and void; if the variance involves the erection or alteration of a building, exercising that variance means obtaining a permit and beginning construction. Therefore, the Second Variance became inoperative and void with respect to the fifty-five rooms that were not constructed and for which a Certificate of Occupancy was not issued.
The plaintiffs allege that they are aggrieved by the BBD's ultra vires issuance of a building permit because the increased inhabitation of Prospect House will result in increased crime, traffic, and public health and safety problems in the neighborhood. Increased crime in the neighborhood, the plaintiffs claim, will depress the value of their land. The plaintiffs claim aggrievements as they own property which abuts or is within one hundred feet of the property on which Prospect House is situated, and that they are specifically affected by its use.
In count two, the plaintiffs seek a declaratory judgment claiming that Bridgeport violated their due process rights guaranteed under the Connecticut constitution and thefourteenth amendment of the United States constitution by failing to CT Page 9287 provide a hearing before issuing a building permit without a variance to Regional. In count three, the plaintiffs allege that the actions of the defendants constitute a private nuisance.
On December 5, 1996, Regional moved to dismiss this action on the ground that the plaintiffs had failed to exhaust their administrative remedies. Regional submitted a memorandum of law in support of the motion. On May 7, 1997, the plaintiffs filed a memorandum of law in opposition.
Regional moves to dismiss this action based on the plaintiffs' failure to timely appeal the issuance of a zoning certification as required by General Statutes §§ 8-6 and 8-7, and their failure to timely appeal the issuance of a building permit as required by General Statutes § 29-266. The plaintiffs maintain that this action is not a zoning appeal taken pursuant to General Statutes § 8-8, but a civil action seeking, inter alia, a permanent injunction, declaratory judgment, and damages. Further, the plaintiff assert that their action falls within well recognized exceptions to the exhaustion doctrine. Both parties agree that the complaint seeks, in effect, to have the court declare null and void the building permit issued to Regional and enjoin increased occupancy of Prospect House.
"[A]s a general matter, the failure of a party to exhaust an available administrative remedy is a subject matter jurisdictional bar to a plenary action in court to test the same issue that the administrative remedy was designed to test."Loulis v. Parrott, 241 Conn. 180, 190-91, (1997). "The two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment; . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." (Citations omitted; internal quotation marks omitted.) Id., 191. "When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Antinerella v. Rioux, 229 Conn. 479, 489,642 A.2d 699 (1994). CT Page 9288
The plaintiffs claim that this action fits within an exception to the exhaustion doctrine that "[a]ny person specifically and materially damaged by a violation of the zoningordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies]." (Emphasis in original; internal quotation marks omitted.) Simko v. Ervin,234 Conn. 498, 504, 661 A.2d 1018 (1995).[2]
In Cummings v. Tripp, 204 Conn. 67, 70, 72, 527 A.2d 230
(1987), the plaintiffs complained to the zoning enforcement officer (ZOE) that the defendants were violating the town's zoning regulations by renting dwellings located on their property. The ZOE determined that the defendants were not in violation of the zoning regulations and advised the plaintiffs of their right to have his decision reviewed by the zoning board of appeals. Id., 72-73. No appeal was taken. Id., 73. Subsequently, the plaintiffs filed suit against the defendants seeking injunctive relief and damages for an alleged violation of the town zoning regulations and an alleged common law private nuisance. Id. Based on the trial referee's findings, the trial court enjoined the defendants from renting their dwellings.Id., 73-74. On appeal, the defendants claimed, inter alia, that the trial court erred in concluding that the plaintiffs were not required to exhaust their administrative remedies. Id., 74.
The Supreme Court acknowledged the general principle that a party must exhaust its administrative remedies "before the Superior Court will obtain jurisdiction to act in the matter."Cummings v. Tripp, supra, 204 Conn. 75. Despite this principle, the Court reiterated its earlier holding that "`[a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies].'" (Internal quotation marks omitted.) Id., quoting Reynolds v. Soffer,183 Conn. 67, 69, 438 A.2d 1163 (1981). In Reynolds the Court found that "the failure to appeal the inaction of the building inspector in enforcing the town zoning regulations to the zoning board of appeals did not preclude the [plaintiffs] from bringing an action for injunctive relief against such violations."Cummings v. Tripp, supra, at 75.
The Supreme Court noted that the plaintiffs had clearly alleged that they would be "`specifically and materially damaged CT Page 9289 by a violation of the zoning ordinances which has occurred . . . on another's land.'" Cummings v. Tripp, at 76. The Court cautioned, however, as to "the necessity for clear and precise allegations of specific and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine." Id.
The defendants in Reynolds argued that "the plaintiffs' allegations do not merit equitable and injunctive relief because the plaintiffs [had] not appealed from the inaction of the building inspector directly to the zoning board on appeals to prevent violations of the [town] zoning regulations and the building code. . . ." Reynolds v. Soffer, supra, at 71. In rejecting the defendants' argument, the Supreme Court cited toJobert v. Morant, 150 Conn. 584, 585, 588, 192 A.2d 553 (1963), "in which [the court] held that despite a building permit issued by the building inspector the trial court was warranted in permanently enjoining the defendants from altering, extending or adding to buildings devoted to a nonconforming use." Reynoldsv. Soffer, supra, 71-72.
In the present case, the plaintiffs have alleged that Prospect House does not meet the requirements of setback or parking for a rooming house within a Residential B Zone. Therefore, Regional was required to obtain a variance to expand its nonconforming use. The plaintiffs allege that Regional did not have a valid variance when it obtained the building permit, and therefore, the present use of the third and fourth floors of Prospect House as a shelter for the homeless is in violation of city zoning regulations. See Jobert v. Morant, supra,150 Conn. 586 ("The conclusion of the [trial] court that the work which the defendants had done on their property was prohibited by the zoning ordinance is tantamount to a finding that the permit issued by the building inspector was illegal."). These allegations, if true, would show that Regional has violated city zoning ordinances by expanding its nonconforming use of Prospect House as a rooming house without first obtaining a valid variance. Consequently, if the plaintiffs can show that they are specifically and materially affected by Regional's violation of zoning ordinances, the plaintiffs may obtain injunctive relief without exhausting their administrative remedies. "The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in and action for injunctive relief is at least one founded on the CT Page 9290 imminence of substantial and irreparable injury." Scoville v.Ronalter, 162 Conn. 67, 74, 291 A.2d 222 (1971). "The plaintiffs must allege facts which, if proven, would establish irreparable injury and assume the burden of proving facts which will establish substantial and irreparable damage if they are to prevail in their request for injunctive relief." Id.
Here, the plaintiffs have alleged that the crime, traffic, and public health and safety problems existing in the neighborhood would be made worse by the increased inhabitation of Prospect House. The plaintiffs further allege that the influx of additional residents would increase both crime and fear of crime, thereby lowering the value of their land.
In Reynolds, supra, at 68, the plaintiffs alleged that "the defendants' acts constitute a nuisance which adversely affects the plaintiffs' property, decreases its value, increases the risk of fire and other dangers, . . . noise, odors, pollution, and disease-causing substances discharged from a new ventilating system." The Court found that the plaintiffs had alleged sufficient facts that, if proven, would show that they were "specifically and materially damaged by a violation of the zoning ordinances. . . ." Id., 69. See also Jobert v. Morant,supra, 150 Conn. 587-88 (trial court was warranted in issuing a permanent injunction where it found that the alterations constituted an unauthorized extension of a nonconforming use which "would tend to harmfully affect the value of the nearby residential properties, including the properties of the plaintiffs, because the increased patronage of the luncheonette would create noise, traffic problems and other conditions detrimental to the neighborhood.").
The plaintiffs have alleged that Regional's violation of zoning ordinances will result in increased traffic, safety, and crime problems. Moreover, the plaintiffs have alleged that the increased crime in the neighborhood will depress the value of their properties. These allegations, if proven, would establish irreparable injury of the plaintiffs.[3]
In conclusion, the plaintiffs have alleged facts which, if proven, would establish that they are specifically and materially damaged by Regional's violation of a zoning regulation. SeeCummings v. Tripp, supra, 204 Conn. 75. Therefore, the plaintiffs are entitled to seek injunctive relief without exhausting their administrative remedies. CT Page 9291
The Court finds that it has subject matter jurisdiction over the plaintiffs' action and the defendant's motion to dismiss is therefore denied.
DAVID W. SKOLNICK, JUDGE