******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HIGH WATCH RECOVERY CENTER, INC. *v.*
# PLANNING AND ZONING COMMISSION
# OF THE TOWN OF KENT
# (SC 20996)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

The plaintiff, which owned two nearby parcels of real property in a rural residential zoning district in the town of Kent, filed an application with the defendant planning and zoning commission, seeking a special permit to construct a greenhouse on one of its parcels. The plaintiff had been operating a residential substance abuse treatment program on one of the parcels since before the enactment of the town's zoning regulations in 1965. In 2017, the plaintiff acquired the other parcel, which was being used as a farm. In 2018, in accordance with the zoning regulations then in effect, the plaintiff applied for and was granted a special permit to conduct certain clinical therapies on the farm parcel, including an agricultural therapy program, in connection with its substance abuse treatment program. The town amended the zoning regulations in 2020 to prohibit the operation of, inter alia, privately operated clinics in rural residential districts, and the plaintiff's use of the farm parcel for the previously approved clinical therapies thus became a preexisting, nonconforming use. After a public hearing on the plaintiff's application for a special permit to construct the greenhouse, which had been filed after the 2020 amendments to the town's zoning regulations, the defendant denied the application on the ground that it would be an impermissible expansion of a nonconforming use. On appeal to the trial court, that court upheld the defendant's decision and dismissed the plaintiff's administrative appeal. The Appellate Court thereafter reversed the trial court's judgment, concluding, inter alia, that the installation of the greenhouse on the farm parcel was a permissible intensification of a nonconforming use, and the defendant, on the granting of certification, appealed to this court. *Held*:

The Appellate Court incorrectly concluded that the installation of the greenhouse was a permissible intensification, rather than an impermissible expansion, of the plaintiff's nonconforming use of the farm parcel for agricultural therapy, and, accordingly, this court reversed the Appellate Court's judgment and remanded the case with direction to affirm the trial court's dismissal of the plaintiff's administrative appeal.

There was substantial evidence in the record to support the defendant's determination that the proposed greenhouse would expand the plaintiff's seasonal, nonconforming use of the farm parcel for agricultural therapy into a year-round use, as the evidence presented at the public hearing established

that the proposed greenhouse would allow the plaintiff to extend the agricultural program from those seasons during which fruits and vegetables could be grown outdoors into additional seasons during which the plaintiff would otherwise not be able to grow such produce.

Although the use of improved and more efficient instrumentalities can be a permissible intensification of a nonconforming use, an extension of a seasonal, nonconforming use into a year-round use, as in the present case, is impermissible because it would not reflect the nature and purpose of the original use and would change the character, nature and kind of use involved.

Contrary to the Appellate Court's conclusion that the plaintiff's nonconforming use of the farm parcel was year-round because the terms of the 2018 special permit allowed certain other clinical therapies, such as equine therapy, a ropes course, and a climbing wall, there was no evidence in the record that those other therapies were conducted on a year-round basis, and, even if some of the plaintiff's nonconforming uses of the farm parcel were year-round, each use must be analyzed independently of the others to determine whether any particular use would constitute a permissible intensification or an impermissible expansion of that use.

Argued December 5, 2024—officially released May 27, 2025

*Procedural History*

Administrative appeal from the decision of the defendant denying the plaintiff's special permit application to build a greenhouse on certain of its real property, brought to the Superior Court in the judicial district of Litchfield, where the court, *Hon. John W. Pickard*, judge trial referee, exercising the powers of the Superior Court, rendered judgment dismissing the plaintiff's appeal, from which the plaintiff, on the granting of certification, appealed to the Appellate Court, *Prescott*, *Clark* and *Seeley, Js.*, which reversed the trial court's judgment and remanded the case with direction to sustain the plaintiff's appeal and to remand the case to the defendant with direction to approve the special permit application, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Michael A. Zizka*, for the appellant (defendant).

*Christopher J. Smith*, for the appellee (plaintiff).

*Opinion*

ECKER, J. This appeal requires us to revisit the recurrent and sometimes elusive distinction in land use law between a permissible intensification and an impermissible expansion of a valid preexisting nonconforming use. The defendant, the Planning and Zoning Commission of the Town of Kent (commission), denied the special permit application submitted by the plaintiff, High Watch Recovery Center, Inc., to build a 2100 square foot greenhouse on property located at 47 Carter Road in the town of Kent (subject property) in connection with the plaintiff's nonconforming use of the subject property for agricultural therapy. Applying the factors set forth in *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 332, 589 A.2d 351 (1991),[1] the Appellate Court concluded that the installation of the greenhouse, also known as a hoop house,[2] was a permissible intensification because the greenhouse would be located on land already devoted to the nonconforming use and would not change the nature, character, or kind of use involved. See *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, 223 Conn. App. 424, 449–51, 308 A.3d 1060 (2024). We disagree and conclude that there is substantial evidence in the record to support the commission's determination that the hoop house

---

[1] In *Zachs*, this court articulated three factors that govern the determination of whether a proposed "activity is within the scope of a nonconforming use . . . ." *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332. These factors are "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect [on] the neighborhood resulting from differences in the activities conducted on the property." Id.

[2] "A hoop house consists of a series of hoops covered with plastic that creates a tunnel in which plants can be grown." *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, 223 Conn. App. 424, 431 n.2, 308 A.3d 1060 (2024); see id., 450. Consistent with the terminology employed by the parties, the trial court, and the Appellate Court, we use the terms "greenhouse" and "hoop house" interchangeably throughout this opinion.

would be an illegal expansion of the nonconforming use because it would change the character of that use from seasonal to year-round. We therefore reverse the judgment of the Appellate Court.

The record reflects the following facts. The plaintiff has operated a residential substance abuse treatment program on property located at 62 Carter Road in Kent (residential property) since before the adoption of the Kent zoning regulations (zoning regulations) in 1965. The residential property includes a seventy-eight bed treatment facility with an on-site kitchen, where meals are prepared for the residents. In 2017, the plaintiff purchased the subject property, which consists of seventy acres and is located across the street from the residential property. At the time of its acquisition, the subject property was being used as a farm and was improved with a residence and a barn.

Pursuant to the zoning regulations, both the residential property and the subject property are located in the Rural Residential (RU-1) district, which permits property to be used for farming and agriculture. The regulations in effect in 2018 also allowed, by special permit, the operation of "[a] privately operated hospital, clinic, nursing home, or convalescent home" in the RU-1 district. Kent Zoning Regs., c. 3200, § 3224 (8) (2018). In February, 2018, the plaintiff filed with the commission a special permit and site plan application, seeking to use the subject property for therapeutic activities in connection with the substance abuse treatment program operated at the residential property across the street. In its application, the plaintiff stated that it "has the opportunity to incorporate into its existing program additional therapies that have proven effective in the treatment of substance use disorders. These new therapies would include equine therapy, a ropes course and climbing wall, and a therapeutic agricultural program and accompanying kitchen facility. In fact, [the plaintiff]

purchased the [subject] property as a working farm in part to continue its agricultural use. . . . The therapies at [the subject property] will be offered as part of the [plaintiff's] existing . . . treatment plan, not as a standalone program; the residents [who] participate in the therapies offered at [the subject property] will be the same residents living at the [residential property] across the street. [The plaintiff] conducts all of its activities in furtherance of its addiction treatment mission and under the principal use category [of] privately operated hospital, clinic, nursing [home] or convalescent home . . . ." (Internal quotation marks omitted.) The commission granted the plaintiff's special permit application, and the plaintiff began using the subject property for the approved therapeutic uses.

In February, 2020, the zoning regulations were amended to prohibit the operation of a privately operated hospital, clinic, nursing home or convalescent home in the RU-1 district. Compare Kent Zoning Regs., c. 3200, § 3224 (2018), with Kent Zoning Regs., c. 3200, § 3224 (2020). The use of the subject property for clinical therapies therefore became nonconforming. See, e.g., *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 712, 519 A.2d 49 (1986) ("[A nonconforming use has] two characteristics. First, it must be *lawful* and second, it must be *in existence* at the time that the zoning regulation making the use nonconforming was enacted." (Emphasis in original.)).

In August, 2020, the plaintiff filed the special permit application at issue in this appeal, which sought permission from the commission to construct a thirty foot by seventy foot hoop house "on [an] existing [g]arden/pasture area" located on the subject property.[3] According to the

---

[3] Although the plaintiff submitted an application for a special permit to the commission, it is undisputed that a special permit was not required for the plaintiff permissibly to intensify its valid nonconforming use of the subject property and that a special permit could not authorize an expansion of that use in violation of the zoning regulations. See Kent Zoning Regs., c.

application, "[n]o concrete work or excessive ground disturbance is expected," "[n]o plumbing or habit[able] space [will be] contained in the structure," and only "[twenty cubic] yards of stone dust [will be deposited] to level [the hoop house] floor."

The commission held a public hearing on the plaintiff's special permit application over several days in September and October, 2020. At the public hearing, the plaintiff's representative, Vincent Roberti, Jr., stated that the hoop house would increase the yield of fruits and vegetables grown on the subject property and allow the plaintiff to "extend the season and start earlier and also . . . [to] do some things over the winter in regards to flowers and vegetables and just [to] get a head start . . . . [S]o this greenhouse will allow us to extend our growing season and . . . [to] move things around the farm and put them into . . . warm storage . . . when . . . needed to avoid frost and things of that nature." Roberti was asked whether "running the greenhouse is going to be part of a therapeutic program that is going to be associated with the campus across the street," and he responded: "It could be. We do have residents from across the street come to [the subject property] to do equine therapy . . . . I don't know if they [will] do anything with the gardening, but they might." The public hearing was continued to a later date so that Roberti could seek clarification as to whether the proposed hoop house was "going to be used as . . . part

9200, § 9210 (2020); id., c. 10400, § 10410 (1); see also *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 223 Conn. App. 449 ("a property owner may permissibly intensify a valid nonconforming use of its property as of right without approval from the commission"). Under these circumstances, it appears as though the plaintiff's application for a special permit "essentially amounted to a prophylactic request for an order from the commission confirming that its use of its proposed greenhouse would be considered a permissible intensification of its valid nonconforming use." *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 450.

of the therapeutic program for the residents across the street."

Jason Perillo, the plaintiff's vice president of communications, later submitted a letter to the commission to address the role that the proposed hoop house would play in the plaintiff's therapeutic activities. Perillo represented that the subject property's "current agricultural footprint is sufficient to meet the [plaintiff's] therapeutic needs . . . . The goal of [the special permit] application is to increase the yield of vegetables that we can utilize in our kitchen at [the residential property] for the feeding of our guests and staff. This is consistent with our special permit application from 2018, which stated, '[the plaintiff] purchased the property as a working farm in part to continue its agricultural use.' We remain true to that intention, and we seek to further continue that [preexisting] use. The intention of this application for a hoop house is not to expand our therapeutic work but to expand our capacity to provide fruits and vegetables to [the residential property]. The work done in the hoop house will be undertaken by staff and the individuals who reside at [the residential property]." The proposed hoop house is "well within all setbacks, is [more than 1000] feet from the road, is not permanently affixed, and is completely invisible to [passersby]. There will be minimal disturbance to the site during construction."

When the public hearing resumed, Perillo emphasized that "[t]he primary goal . . . is . . . not really therapeutic in nature. We are not trying to expand any therapeutic programs . . . . The goal is to be . . . more self-sustaining in terms of the food that we offer to our guests across the street at [the residential property]. . . . [T]his is simply for us to expand that and do it in seasons [that] we would otherwise not be able to." Perillo acknowledged, however, that the hoop house would play a role in the plaintiff's agricultural therapy

program. Perillo explained that "[a] component of [the residents'] therapy . . . is actually . . . the impact of farming itself . . . . We actually have something called horticulture therapy . . . [and] we are able to incorporate [that] with the agricultural use that's there. So, we have both staff . . . who . . . farm that property, and we also have guests . . . who, as part of their therapy, do the same thing. And they work together." According to Perillo, there was "not a wall" between the therapies conducted on the residential and subject properties, and "it is conceivably possible that therapeutic work could be conducted in [the proposed hoop house], but that is not the goal. That's not the reason [for the special permit application]. The reason is simply because we want to be able to meet the needs of the kitchen across the street [at the residential property]." Perillo stated that "[t]he simple fact of the matter is that we can't [grow produce] in January, but a hoop house will help us do that."

Many of the plaintiff's neighbors spoke in opposition of the plaintiff's special permit application. The trial court accurately observed that "[t]heir comments ranged from legalistic (the 2020 amendment to the zoning regulations means that the plaintiff's program is no longer a permitted use and can't be expanded) to hyperbolic (the plaintiff is an 'omnivorous beast that just won't stop')." The plaintiff's neighbors largely were concerned with increased traffic, construction, and the expansion of the plaintiff's commercial enterprise in an area zoned exclusively for agricultural and residential uses.[4]

---

[4] At the public hearing, Roberti was asked whether the fruits and vegetables grown in the hoop house would be sold either off-site at a farmer's market or on-site at a farmstand. Roberti responded: "[N]ot at this time, but . . . it is something that we would really like to do. We'd really like to as yield increases and we get better at it . . . or [if we gain] some organic certifications, we would like to market it and sell it. Yes, it is something that we'd like to do." Roberti's statements were consistent with information posted on the plaintiff's website at that time, which indicated that the plaintiff

Following the close of the public hearing, the commission denied the plaintiff's application for a special permit on the grounds that "it is unclear whether . . . this proposed structure and its use would increase the intensity of a use that is preexisting [and] nonconforming as a result of its affiliation with the use of [the residential property]" and that there was "conflicting information" regarding the moderation or mitigation of the impacts on the neighborhood. See Kent Zoning Regs., c. 10400, § 10440 (3) and (11) (2020) (factors applicable to special permit application include "[w]hether the proposed use will have a detrimental effect on neighboring properties or the development of the district" and "[w]hether adequate provisions have been made to moderate or mitigate neighborhood impacts by limiting the intensity of use of the property (including, without limitation, such considerations as the area devoted to the use, the number of people involved in the use, the number of events or activities proposed, the hours of operation, etc.) or by modifying the location or configuration of the proposed use").

The plaintiff appealed from the decision of the commission to the trial court,[5] claiming that (1) farm build-

had plans "to grow the farm program exponentially" by installing "one greenhouse this fall, which will allow our . . . guests to work and grow all winter," and by "obtain[ing] funding for a second greenhouse next season." The website also stated that the plaintiff "would ultimately like to see four greenhouses for vegetables and herbs" so that "some of our goods [could be] sold" and the "proceeds from the sale of the farm products" could be used to fund substance abuse treatment programs at the plaintiff's residential property "for guests experiencing financial troubles." Roberti later clarified that the plaintiff was "not proposing a commercial farming operation" or farmstand, and he "probably should not have said [that]" because "[n]o one has mentioned that. I could see that as a use. We're not planning it, so . . . I don't want that on the record that we are planning" to sell the fruits and vegetables grown on the subject property. Perillo also stated that the website was inaccurate and that "there is no plan right now to have a farmstand" or to sell any produce off-site.

[5] See General Statutes § 8-8 (b).

ings and accessory structures, including hoop houses, are permitted in the RU-1 district under the zoning regulations, (2) the proposed hoop house is a permissible intensification of a nonconforming use, and (3) the evidence was insufficient to support the commission's determination that the hoop house would have a detrimental impact on neighboring properties. The trial court rejected the plaintiff's claims, concluding that (1) farm buildings are permitted only in connection with the principal use of a property as a residence or farm, but the principal use of the subject property is for "therapeutic activities in conjunction with a privately operated hospital, clinic, nursing or convalescent home or similar institution," (2) the nonconforming use of the subject property for therapeutic activities "cannot be intensified in accordance with the *Zachs* standards" because the plaintiff's use of that property is limited to the terms of the 2018 special permit and site plan approval, and, even if the *Zachs* factors are applied, the erection of a new structure is an illegal expansion, not a permissible intensification, of a nonconforming use, and (3) the commission's reliance on the intensity of the nonconforming use to deny the plaintiff's application for a special permit had "nothing to do with neighboring properties" but, rather, was "consistent with the notion that the plaintiff was proposing an unlawful expansion of a nonconforming use."[6] (Internal quotation marks omitted.) Accordingly, the trial court dismissed the plaintiff's appeal.

The plaintiff filed a petition for certification for review, which the Appellate Court granted. See General Statutes § 8-8 (o). In the Appellate Court, the plaintiff raised only two claims: (1) the trial court "erred as a

---

[6] The trial court did not address the commission's other stated reason pertaining to moderation or mitigation of impacts on the neighborhood on the ground that "even one valid reason for denial is sufficient for the court to reject an appeal."

matter of law in holding that the plaintiff's valid noncon-forming use of the [subject] property may not be intensi-fied in accordance with the criteria set forth in *Zachs*"; *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 223 Conn. App. 435; and (2) the trial court incorrectly concluded that "the use of the proposed greenhouse would be an illegal expansion of the plaintiff's valid nonconforming use of the [sub-ject] property" under the *Zachs* criteria. Id., 446. The plaintiff did not challenge the trial court's determination that the hoop house was not permitted as of right in the RU-1 district on the ground that the principal use of the subject property is nonconforming. See id., 433 and n.5. Thus, for purposes of the present appeal, it is undisputed that the proposed hoop house will "be utilized as part of [the plaintiff's] valid nonconforming therapeutic agricultural use of the subject property . . . ."

The Appellate Court reversed the judgment of the trial court, concluding that a nonconforming use con-ferred by way of a special permit and site plan approval lawfully "may be intensified in accordance with the *Zachs* criteria"; *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 223 Conn. App. 442; and that, pursuant to *Zachs*, the proposed hoop house was a permissible intensification of the plaintiff's nonconforming use. See id., 446–56. In partic-ular, the court determined that, under the first *Zachs* factor, which examines the extent to which the pro-posed use reflects the nature and purpose of the non-conforming use, the hoop house fell within the scope of the original nonconforming use of the subject prop-erty for agricultural therapy because "[t]he proposed thirty foot by seventy foot hoop house on the plaintiff's approximately seventy acre property would be placed [in] the existing farm garden and pasture area on the [subject] property where plants are already grown. . . .

The greenhouse would permit the plaintiff to continue to grow fruits and vegetables in order to feed and support . . . residents and staff residing on the residential property—activities that it already does." Id., 450. With respect to the second *Zachs* factor, which considers any differences in the character, nature, or kind of use involved, the Appellate Court determined that "[t]he proposed hoop house simply provides an improved and more efficient way to grow fruits and vegetables and to provide therapeutic agricultural services." Id., 451. As for the third *Zachs* factor, regarding substantial impacts on the neighborhood, the Appellate Court held that there was insufficient evidence to support the finding of the commission that the hoop house would have an adverse effect on the neighborhood because "the plaintiff's proposed use of the hoop house is consistent with the permitted as of right uses and accessory uses in the RU-1 district"; id., 453; the hoop house "would [not] be seen from the road"; id., 454; and the neighbors' "general grievances" were "not specific to the application and site plan under consideration . . . ." Id., 455.

In arriving at its conclusion, the Appellate Court rejected the commission's arguments that "the addition of a structure to a nonconforming use is a per se change in the character of the use" and "would allow, for the first time, the plaintiff to grow fruits and vegetables into the winter season." Id., 451. With respect to the commission's per se argument, the court acknowledged that "some courts have concluded that the addition of a new structure or the expansion of an existing building constituted an illegal expansion of a nonconforming building or use" but determined that "the legality of a proposed change to a nonconforming use is a fact intensive inquiry that must be conducted on a case-by-case basis." Id., 452. As for the commission's argument regarding the seasonality of the nonconforming use, the Appellate Court recognized that "a proposal to extend a

nonconforming use into an additional season or seasons may, under certain circumstances, constitute an illegal expansion of the nonconforming use . . . .'' (Citation omitted.) Id. Nonetheless, the court held that the plaintiff's nonconforming use was not seasonal in nature because it was "not limited to vegetable farming. It is broader than that. It includes use of the [subject] property for therapeutic and agricultural purposes, including for the operation of an equine therapy program; a ropes course and climbing wall; and various agricultural activities, including a therapeutic agricultural program." Id., 452–53. Moreover, "[t]he 2018 special permit did not purport to limit these activities to the time of year during which vegetables may be grown outdoors, and the commission does not contend that all of the plaintiff's lawful activities on the [subject] property since the issuance of the special permit have been confined to that period of time." Id., 453.

We granted the commission's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the plaintiff had a legal right to erect a 2100 square foot greenhouse as a nonconforming clinical use when it [a] was intended to be accessory to the use of a separate lot, and [b] would change a seasonal nonconforming use of property to a year-round use?" And (2) "[d]id the Appellate Court correctly conclude that the plaintiff had a right to erect a structure not shown in an approved special permit site plan even though the special permit use was no longer allowed in the zone where the property was located?" *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, 348 Conn. 956, 310 A.3d 379 (2024).

We begin our analysis with a brief discussion of nonconforming uses. It is well established that "the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning

regulations," or any amendment thereto, is protected by the constitution and the General Statutes. (Emphasis omitted; internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 240, 662 A.2d 1179 (1995); see *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979) (nonconforming uses are vested rights protected by constitution); see also General Statutes § 8-2 (d) (4) (A) ("[z]oning regulations . . . shall not . . . [p]rohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations"). That said, our cases repeatedly and uniformly hold that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit—[i]n no case should they be allowed to increase." (Internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). The goal "is to contain a nonconforming use within the limits of the use in existence when the regulations were adopted [or amended] so that, eventually, the use may be brought into conformity with the regulations for the district in which the premises are located." *Guilford* v. *Landon*, 146 Conn. 178, 182–83, 148 A.2d 551 (1959); see also *Weyls* v. *Zoning Board of Appeals*, 161 Conn. 516, 519, 290 A.2d 350 (1971); *Salerni* v. *Scheuy*, 140 Conn. 566, 570, 102 A.2d 528 (1954).

Consistent with these principles, the Kent zoning regulations provide in relevant part that their "purpose and intent . . . [is] to permit non-conforming lots, uses and structures to continue until they are removed but not to encourage their survival" and that "non-conforming lots, uses and structures shall not be enlarged, expanded or extended if such a change would increase the non-conformity, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Kent Zoning Regs., c. 9200, § 9210 (2020).

A nonconforming use thus cannot be (a) "[e]nlarged or increased, nor extended to occupy a greater floor area or area of land than was occupied at the effective date of adoption or amendment of [the zoning] [r]egulations," (b) "[m]oved in whole or in part to any portion of the land other than that occupied by such use at the effective date of adoption or amendment of [the zoning] [r]egulations," or (c) "[e]xtended or enlarged by the attachment to a building or land of additional signs intended to be seen from off the premises, or by the addition of other uses of a nature which would be prohibited generally in the district involved." Id., c. 9200, § 9230 (3).

Because preexisting nonconformities are vested rights that may not be enlarged, we have drawn a distinction between their permissible *intensification* and their impermissible *expansion*. Identifying the specific nature of the nonconformity is an important first step in determining whether an activity is an impermissible expansion of that use. One commentator has explained that "[t]here are basically four types of nonconformity: (1) nonconforming use—the use of the land or structure on it is nonconforming (e.g., a commercial use in a residential zone); (2) a nonconforming lot—the lot is undersized, irregularly shaped, has inadequate width or depth or inadequate frontage; (3) nonconforming building or structure—the structure does not meet the minimum or maximum size requirements, floor area ratio, height or bulk requirements of the existing zoning regulations; [and] (4) nonconformity as to location of structure, i.e., it does not conform with one or more of the setback requirements." D. Merriam, 9B Connecticut Practice Series: Land Use Law and Practice (2025 Ed.) § 52:1, p. 246; accord *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 806, 818 A.2d 72 (2003); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 244 n.14 ("[t]he conclusion that [m]ore of the same . . . cannot be the basis for a find-

ing of an unlawful expansion of a prior existing nonconforming use . . . can . . . be read to apply [only when] it is more of the same *use*, not more of the same in the physical sense" (citation omitted; emphasis in original; internal quotation marks omitted)); *Petruzzi* v. *Zoning Board of Appeals*, supra, 176 Conn. 481 n.2 ("[i]t is recognized that the distinction between a nonconforming building or structure and a nonconforming use of land is genuine and may be critical" (internal quotation marks omitted)).

The nonconformity at issue in the present case pertains only to the *use* of the proposed hoop house for therapeutic agricultural activities in connection with the substance abuse treatment facility operated on the residential property. There is no claim that the proposed hoop house is a nonconforming building or structure. To the contrary, the zoning regulations expressly permit "[a] building or structure customarily incidental to the operation of a farm (such as a barn or storage shed)" in the RU-1 district with a zoning permit. Kent Zoning Regs., c. 3200, § 3232 (1) (2020); see also id., c. 2200 (defining "farm" to mean "[l]and used primarily for agricultural activities including . . . farm buildings and accessory buildings thereto including barns, silos, *greenhouses*, *hoop-houses* and other temporary structures or other structures" (emphasis added)). Nor is there a claim that the proposed hoop house would be situated on a portion of the subject property that is not already devoted to therapeutic agricultural activities. See, e.g., *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744–45, 626 A.2d 705 (1993) (extension of nonconforming use to other areas of parcel was illegal expansion); *State* v. *Perry*, 149 Conn. 232, 235, 178 A.2d 279 (1962) ("an expansion and extension of the use of the premises by adding facilities for storage and the freezing of commodities where such accommodations had not pre-

viously existed" constituted illegal expansion). Likewise, the lot on which the subject property is located conforms with the zoning regulations, and the proposed location of the hoop house complies with all setback requirements. It is the plaintiff's use of the proposed hoop house for agricultural therapy that renders the structure nonconforming.

When the nonconformity pertains solely to the use of property in a manner not permitted under the current zoning regulations, local authorities and courts apply the three factors identified in *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332, to determine whether the proposed use is a permissible intensification or an impermissible expansion. These factors are "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect [on] the neighborhood resulting from differences in the activities conducted on the property." The *Zachs* factors supplement, but do not supersede or overrule, our prior case law identifying the types of activities that constitute impermissible expansions of nonconforming uses.[7] See, e.g.,

---

[7] The commission claims that the *Zachs* factors are inapplicable to the present case because "*Zachs* is readily distinguishable on its facts: it did not involve an expansion of enclosed space to accommodate a nonconforming use." We recognize that *Zachs* involved the installation of additional equipment to facilitate the nonconforming use (i.e., additional radio antennae, electric meters, transmitters, and an electrical generator were installed in connection with an existing radio tower), rather than the erection of a building or structure to enclose a nonconforming use. See *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 326–27, 330. But that factual distinction does not diminish the utility of the *Zachs* factors in helping local authorities and courts distinguish permissible from impermissible alterations in use. The *Zachs* factors do so by focusing on the nature and purpose of the original use, any differences in the proposed use with regard to the character, nature and kind of use involved, and any substantial differences in the effects on the neighborhood resulting from the change in use. These considerations are not inconsistent with the approach used in our prior case law, which also focuses on a comparison of the purpose, nature, kind, character, and effects of the original use and the proposed changes.

*Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, 139 Conn. App. 748, 762–64, 57 A.3d 810 (2012) (analyzing *Zachs* factors in light of prior case law); *Crabtree Realty Co.* v. *Planning & Zoning Commission*, 82 Conn. App. 559, 565, 845 A.2d 447 (focusing on whether proposed use changed nature of nonconforming use rather than "the precise wording" of *Zachs* factors), cert. denied, 269 Conn. 911, 852 A.2d 739 (2004). Although "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use," a change in the character of the nonconforming use "bring[s] it within the prohibition of the zoning ordinance." (Internal quotation marks omitted.) *Zachs* v. *Zoning Board of Appeals*, supra, 331.

Critical to our disposition of this case is the fact that our case law has long held that the extension of a seasonal nonconforming use into a year-round use is a change of character that constitutes an impermissible expansion. For example, in *Beerwort* v. *Zoning Board of Appeals*, 144 Conn. 731, 137 A.2d 756 (1958), we considered whether "the year-round use of trailers in a trailer park, as opposed to their seasonal use during the late spring, summer and early fall months," was an expansion of a nonconforming use in violation of the pertinent zoning regulations. Id., 732. We concluded that the "prolongation of a nonconforming use into a season in which the use had not existed at the time of the passage of the regulations . . . would be in fact, as well as in law, the extension of a nonconforming use at the expense of a conforming one. Any extension, either in time or in space, of the use beyond the one current at the time of the passage of the [zoning] regulations is a proscribed extension of a nonconforming use and is certainly not consonant with the policy of the regulations themselves." Id., 734–35.

Following *Beerwort*, both this court and the Appellate Court consistently have held that the preexisting non-

conforming use of a residence or business only during certain months of the year does not entitle a property owner to extend that seasonal nonconformity into year-round use. See, e.g., *Cummings* v. *Tripp*, 204 Conn. 67, 83–86, 527 A.2d 230 (1987) (rental of cottages during summer months was valid nonconforming use, but extension of rental season to year-round use constituted impermissible expansion); *Weyls* v. *Zoning Board of Appeals*, supra, 161 Conn. 520 ("[a]n increase in the use of property from the summer months to a year-round use is clearly a type of enlargement intended to be proscribed by the . . . zoning regulations"); *Jobert* v. *Morant*, 150 Conn. 584, 587, 192 A.2d 553 (1963) (installation of structure to enclose outdoor patio that was not used by luncheonette patrons "when it was raining or otherwise inclement, [or] in winter," was "an unauthorized extension of a nonconforming use [that] was prohibited by the zoning ordinance"); *Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, supra, 139 Conn. App. 764 ("the proposed year-round use as a Dunkin Donuts franchise was significantly different in character from the previous seasonal use as [a] restaurant" because it was "[an] expansion of the business into additional months of the year" and "was an impermissible expansion of the previous nonconforming use").[8] Viewed through the lens of the *Zachs* factors, a property owner's extension of a seasonal nonconforming use into a year-round use is impermissible because it does not reflect "the nature and purpose of the original use" and changes "the character, nature and kind

---

[8] A distinction has been made between a nonconforming use that is seasonal and one that is intermittent but year-round. See *Planning & Zoning Commission* v. *Craft*, 12 Conn. App. 90, 97–98, 529 A.2d 1328 (property owner's "full-time year-round occupancy was in substantial conformity with her prior part-time, but year-round, nonconforming use," and, therefore, "[t]here [was] no extension of the nonconforming use, but at most an unmeasurable intensification of an unmeasured nonconforming use"), cert. denied, 205 Conn. 804, 531 A.2d 937 (1987).

of use involved . . . ." *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332; see *Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, supra, 764; see also footnote 7 of this opinion.

The determination of whether a nonconforming use has been permissibly intensified or impermissibly expanded "is [a] question of fact for [the] fact finder . . . ." (Citation omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, 341 Conn. 702, 720 n.18, 267 A.3d 811 (2022). The commission's factual resolution of the issue must be supported by substantial evidence in the record. See *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 329–30. "The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *McLoughlin* v. *Planning & Zoning Commission*, 342 Conn. 737, 752, 271 A.3d 596 (2022).

It is undisputed on appeal that the use to which the proposed hoop house would be dedicated—agricultural therapy—is nonconforming; the sole question before us is whether there is substantial evidence in the record to support the commission's factual finding that it would constitute an impermissible expansion of that nonconforming use. We conclude that substantial evidence exists to support the commission's decision. The evidence before the commission established that the proposed hoop house would permit the plaintiff to extend its current therapeutic agricultural program into "seasons [during which the plaintiff] would otherwise not be able to" grow fruits and vegetables outdoors. Perillo informed the commission, in no uncertain terms, that "[t]he simple fact of the matter is that [the plaintiff] can't [grow produce] in January, but a hoop house will help [it] do that." On the basis of this evidence, the

commission reasonably found that the proposed hoop house impermissibly would expand the plaintiff's current seasonal nonconforming use of the subject property for agricultural therapy into a year-round use.[9]

The plaintiff claims that "the commission did not cite an impermissible intensification of a seasonal use as a reason for its decision; therefore, this reason cannot be raised for the first time on appeal." We reject this claim because it is incumbent on a reviewing court to "search the entire record to find a basis for the commission's decision . . . ."[10] (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 670, 894 A.2d 285 (2006); see also *Harris* v. *Zoning Commission*, 259 Conn. 402, 420, 788 A.2d 1239 (2002) (when "[an] agency has rendered a formal, official, collective statement of reasons for its action," court will review administrative record to determine "whether the assigned grounds are reasonably supported . . . and whether they are pertinent to the considerations [that] the authority was required to apply"

---

[9] In light of our conclusion, we need not reach the commission's argument that the installation of a structure or building to enclose a nonconforming use *always* will constitute an impermissible expansion of the character, nature, or kind of use involved.

[10] Although this claim is reviewable on appeal even in the absence of any express findings under the *Zachs* factors, it is preferable for local zoning authorities to consider these factors and to make explicit factual findings to aid courts reviewing these decisions on appeal. To the extent that the factors are applied by courts to determine whether a proposed use is a permissible intensification or an impermissible expansion, such express subordinate findings will obviously facilitate review. Nonetheless, the deferential standard of review and the presumption of regularity means that, "[i]f *any* reason culled from the record demonstrates" a valid factual basis, then "the decision of the commission must be upheld." (Emphasis in original; internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 670, 894 A.2d 285 (2006); see also *Parker* v. *Zoning Commission*, 209 Conn. App. 631, 685, 269 A.3d 157 (conduct of municipal land use agencies "carries a strong presumption of regularity," and, therefore, "[w]hen a zoning commission fails to articulate explicit factual findings to support its decision, a reviewing court is obligated to search the entire record to find a basis for the commission's decision" (internal quotation marks omitted)), cert. denied, 343 Conn. 908, 273 A.3d 694 (2022).

(internal quotation marks omitted)). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–40, 525 A.2d 940 (1987). One of the reasons given for the commission's denial of the plaintiff's application for a hoop house was that it would be an impermissible expansion of the plaintiff's nonconforming use of the subject property, and, as discussed previously, there is substantial evidence supporting that finding. Our review of the record reveals that the commission considered the seasonality of the plaintiff's use in arriving at its decision. During its deliberations, some of the commission members expressed concern that the proposed hoop house would be "generating more" fruits and vegetables and "extend[ing] the season and harvesting . . . ." The plaintiff's contention that the seasonality of the nonconforming use could not have been the basis for the commission's denial of the special permit lacks merit.

Finally, we address the Appellate Court's conclusion that the commission's decision was not supported by substantial evidence in the record on the grounds that (1) "[t]he proposed hoop house simply provides an improved and more efficient way to grow fruits and vegetables and to provide therapeutic agricultural services"; *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 223 Conn. App. 451; (2) the plaintiff's nonconforming use of the subject property "is not limited to vegetable farming" but includes "the operation of an equine therapy program; a ropes course and climbing wall; and various agricultural activities, including a therapeutic agricultural program"; id., 452–53; and (3) the 2018 special permit did not limit the plaintiff's nonconforming use "to the time of year during which vegetables may be grown outdoors . . . ."[11] Id., 453.

---

[11] The Appellate Court also determined that there was insufficient evidence of substantial difference in adverse effect on the neighborhood. See *High*

First, although the use of "improved and more efficient instrumentalities" can be a permissible intensification of a nonconforming use, "the original nature and purpose of the undertaking [must] remain unchanged." (Internal quotation marks omitted.) *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 334. Indeed, in *Cummings* v. *Tripp*, supra, 204 Conn. 67, we rejected the claim that the use of improved and more efficient instrumentalities to transform a seasonal nonconforming use into a year-round use was a permissible intensification of that use. See id., 83–86. In that case, the property owners "insulated and modernized" seasonal summer cottages; id., 71; by installing "full interior bathrooms, hot and cold running water, full kitchens and gas heat" to permit the cottages to be rented year-round. Id., 71 n.6. We opined that the original use of the cottages as summer rentals was seasonal in nature, but the property owners had "added a new business undertaking—a year-round business. This is not a negligible or cosmetic change but rather a substantial departure from the original nature and purpose of the legal nonconforming use . . . . [T]his change can be said to exceed the tolerance that is to be accorded nonconforming uses." Id., 85; see also *Verstandig's Florist, Inc.* v. *Board of Appeals*, 229 App. Div. 2d 851, 852, 645 N.Y.S.2d 635 (1996) (installation

Watch Recovery Center, Inc. v. Planning & Zoning Commission, supra, 223 Conn. App. 453–56. Because we conclude that the record supports the commission's determination that the proposed hoop house would change the character of the plaintiff's seasonal nonconforming use of the subject property, we need not address the evidence as to the effect that the proposed hoop house would have on the neighborhood. See, e.g., *Crabtree Realty Co.* v. *Planning & Zoning Commission*, supra, 82 Conn. App. 564–65 (extension of nonconforming use to separate property "*was* a change in [the property's] nature" that constituted impermissible expansion, despite commission's failure to address *Zachs* factors (emphasis in original)); *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 259, 820 A.2d 275 (concluding that proposed use of property "[a]lmost tripling the number of parking spaces" was impermissible expansion of nonconforming use, even though, under second *Zachs* factor, "the kind of use is identical"), cert. denied, 264 Conn. 906, 826 A.2d 177 (2003).

of temporary greenhouse was impermissible "because it [would] transform the basic nature of the present use in that it will result in the abandonment of open field cultivation in favor of cultivation inside a controlled environment where plants are grown in containers"). Thus, a year-round use does not fall within the nature, purpose, and scope of a seasonal nonconforming use.

Second, we disagree with the Appellate Court that the plaintiff's nonconforming use of the subject property for a therapeutic agricultural program was year-round because there also was an equine therapy program, a rock wall, and a ropes course on the subject property. See *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 223 Conn. App. 452–53. There is no evidence in the record that these other types of clinical therapies are operated on a year-round basis. The evidence before the commission focused solely on the nature, purpose, and scope of the agricultural therapy program because it was the one clinical program that the plaintiff sought to supplement by installing the proposed hoop house. In the present case, the plaintiff's nonconforming use of the subject property is limited to four distinct types of clinical therapies: equine therapy, agricultural therapy, a ropes course, and a climbing wall. Each of these enumerated therapies must be examined independently of the others to ascertain the nature, character, or kind of use involved. See, e.g., *Pfister* v. *Madison Beach Hotel, LLC*, supra, 341 Conn. 729 (nonconforming "use analysis necessarily depends on the nature and scope of the use being claimed"). In other words, when multiple nonconforming uses are at issue, each use must be analyzed individually on its own merits to determine whether the proposed activity would constitute a permissible intensification or an impermissible expansion of that use. See, e.g., *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332–35 (analyzing addition of antennae to radio tower

separately from installation of emergency generator); *Cummings* v. *Tripp*, supra, 204 Conn. 83–86, 95–96 (analyzing year-round rental of summer cottages separately from "[a] change from weekly rentals to daily rentals"); *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 242–51, 257–61, 820 A.2d 275 (analyzing vertical expansion of nonconforming building separately from addition of parallel parking spaces), cert. denied, 264 Conn. 906, 826 A.2d 177 (2003). Even if we assume, without deciding, that *some* of the plaintiff's nonconforming uses of the subject property are year-round, it does not follow that *all* of them must be characterized as year-round, especially when there is evidence in the record to the contrary.

The Appellate Court's reliance on the absence of a seasonal limitation in the 2018 special permit and site plan approval is flawed for two reasons. First, it is well established that the nature, character, or kind of nonconforming use must be measured by the *actual* use of the subject property, rather than by its *contemplated* use. See, e.g., *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 789, 639 A.2d 519 (1994) ("[T]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use." (Internal quotation marks omitted.)); *Beerwort* v. *Zoning Board of Appeals*, supra, 144 Conn. 734 ("Year-round use of the trailer park may . . . have been contemplated by the owner, but it had never become an accomplished fact, and the actual use was limited to the warmer months. Any extension of the use of the park beyond the months during which it had previously been used would be in fact, as well as in law, the extension of a nonconforming use at the expense of a conforming one."). There was no evidence that the plaintiff actually used the subject property year-round

for agricultural therapy when that use became nonconforming in 2020 due to the change in the zoning regulations. In fact, the evidence before the commission was quite the opposite.

Second, even if we were to consider the plaintiff's contemplated use of the subject property, the 2018 special permit and site plan approval authorized only an *outdoor* agricultural therapy program. Considering the harsh winter climate in Connecticut, outdoor agricultural crop cultivation, whether for the purpose of consumption, sale, or therapy, is seasonally limited to the time of year when the soil is not frozen, the fields are not blanketed in snow, and the plants are not lying dormant. A seasonal limitation on the outdoor therapeutic agricultural therapy program therefore was implicit in the scope of the nonconforming use allowed by the 2018 special permit and site plan approval.

For the foregoing reasons, we conclude that there is substantial evidence in the record to support the commission's determination that the installation of the proposed hoop house would constitute an impermissible expansion of the plaintiff's nonconforming use of the subject property for a clinical agricultural therapy program because it would change the character of that use from seasonal to year-round.[12]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment.

In this opinion the other justices concurred.

------

[12] Because our conclusion is dispositive of the present appeal, we do not address the remaining certified issues. See *High Watch Recovery Center, Inc.* v. *Planning & Zoning Commission*, supra, 348 Conn. 956.